OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.


The State of Ohio, Appellee, v. Steffen, Appellant.
The State of Ohio, Appellee, v. Byrd, Appellant.
The State of Ohio, Appellee, v. Beuke, Appellant.
The State of Ohio, Appellee, v. Zuern, Appellant.
The State of Ohio, Appellee, v. Sowell, Appellant.
The State of Ohio, Appellee, v. Holloway, Appellant.
The State of Ohio, Appellee, v. Poindexter, Appellant.
The State of Ohio, Appellee, v. Henderson, Appellant.
The State of Ohio, Appellee, v. Hicks, Appellant.
The State of Ohio, Appellee, v. Jamison, Appellant.
[Cite as State v. Steffen (1994),    Ohio St.3d    .]
Criminal procedure -- Death penalty -- Execution date set by
    Supreme court of Ohio may not be stayed by any other state
    court -- When criminal defendant has exhausted direct
    review, one round of postconviction relief, and one motion
    for delayed reconsideration in the court of appeals and in
    the Supreme Court, any further action a defendant files in
    the state court system is likely to be interposed for
    purposes of delay and would constitute an abuse of the
    court system.
(Nos. 86-193, 86-512, 86-642, 86-1130, 86-1499, 86-1597, 87-243, 87-447, 88-1079 and 88-1286 -- Submitted April 19, 1994 -- Decided September 28, 1994.)

Appeals from the Court of Appeals for Hamilton County, Nos. C-830445, C-830676, C-830829, C-840803, C-830835, C-840871, C-850394, C-850557, C-860173 and C-850753.

1. Case No. 86-193, David Steffen.

In 1983, a jury convicted David J. Steffen of the murder of Karen Range of Cincinnati. The trial court sentenced him to death, and the court of appeals affirmed Steffen's conviction and sentence. On June 24, 1987, we rejected Steffen's twenty-three propositions of law and unanimously affirmed Steffen's conviction and sentence. 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383. Steffen then petitioned for a writ of certiorari in the Supreme Court of the United States, which was denied in February 1988. 485 U.S. 916, 108 S.Ct. 1089, 99 L.Ed.2d 250, rehearing denied, 485 U.S. 1030, 108 S.Ct. 1587, 99 L.Ed.2d 902.

On August 7, 1991, the court of appeals affirmed the dismissal of Steffen's petition for postconviction relief.  We denied Steffen's jurisdictional motion from that judgment on January 15, 1992, 62 Ohio St.3d 1494, 583 N.E.2d 966, rehearing denied, 63 Ohio St.3d 1407, 585 N.E.2d 428.

In July 1992, Steffen initiated collateral litigation under R.C. 149.43 to gain access to the trial judge's trial notes.  We affirmed the dismissal of Steffen's complaint for a writ of mandamus in October 1993.  67 Ohio St.3d 439, 619 N.E.2d 688.

Steffen also applied for delayed reconsideration under State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204.  We affirmed the court of appeals' denial of relief in November 1993.  67 Ohio St.3d 1500, 622 N.E.2d 649, rehearing denied, 68 Ohio St.3d 1418, 624 N.E.2d 192.

On March 2, 1994, we denied Steffen's delayed motion to reinstate his direct appeal.  On March 14, 1994, the state of Ohio filed a motion to set an execution date.

2.  Case No. 86-512, John Byrd.

In 1983, a jury convicted John Byrd of the aggravated murder of Monte Tewksbury.  The trial court sentenced him to death, and the court of appeals affirmed his conviction and sentence.  In August 1987, we rejected Byrd's nineteen propositions of law and unanimously affirmed his conviction and sentence.  State v. Byrd (1987), 32 Ohio St.3d 79, 512 N.E.2d 611.  Byrd appealed to the Supreme Court of the United States, which denied his petition for a writ of certiorari in January 1988.  484 U.S. 1037, 108 S.Ct. 763, 98 L.Ed.2d 780, rehearing denied, 485 U.S. 972, 108 S.Ct. 1252, 99 L.Ed.2d 449.

The court of appeals reversed the denial of Byrd's petition for postconviction relief, instructing the trial court to review the entire record.  State v. Byrd (Feb. 13, 1991), Hamilton App. No. C-890699, unreported.  We refused to review that judgment.  60 Ohio St.3d 705, 573 N.E.2d 665.  In August 1992, we overruled Byrd's jurisdictional motion on his appeal after the remand of his postconviction proceeding.    64 Ohio St.3d 1442, 596 N.E.2d 472.

In February 1991, the court of appeals affirmed the trial court's denial of Byrd's motion for a new trial.  State v. Byrd (Feb. 13, 1991), Hamilton App.No. C-890659, unreported.  We refused to accept Byrd's appeal of that judgment.  State v. Byrd (1991), 61 Ohio St.3d 1421, 574 N.E.2d 1092.

On October 27, 1993, we affirmed the decision of the court of appeals denying Byrd's application for delayed reconsideration under State v. Murnahan, supra, 67 Ohio St.3d 1485, 621 N.E.2d 407, rehearing denied, 68 Ohio St.3d 1412, 623 N.E.2d 568.  Also on that date, we denied Byrd's motion for delayed reinstatement of his original appeal.  67 Ohio St.3d 1487, 621 N.E.2d 409, rehearing denied, 68 Ohio St.3d 1411, 623 N.E.2d 567.

Most recently, Byrd applied for a one-hundred-twenty-day stay of the proceedings in his federal habeas corpus case in order to comply with McCleskey v. Zant (1991), 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517.  Judge Carl B. Rubin of the United States District Court for the Southern District of Ohio, Western Division, denied this motion, concluding that: "The current motions are intended only for purposes of delay.  Ten

years and eleven months; nine appeals and forty-eight judicial inquiries should be enough." Order of Judge Carl B. Rubin, No. C-1-94-167. The United States Court of Appeals for the Sixth Circuit reversed and granted the stay, No. 94-3251, and the Supreme Court of the United States denied the application to vacate the stay, No. A-758. On April 18, 1994, the state of Ohio filed a motion to set execution date.

3. Case No. 86-642, Michael Beuke.

In October 1983, a jury convicted Michael Beuke of the aggravated murder of Robert S. Craig. The trial court imposed a death sentence, and the court of appeals affirmed. Beuke raised twenty propositions of law, but we rejected these and affirmed Beuke's conviction and sentence in 1988. 38 Ohio St.3d 29, 526 N.E.2d 274, rehearing denied, 38 Ohio St.3d 718, 533 N.E.2d 788. The Supreme Court of the United States denied Beuke's petition for a writ of certiorari. Beuke v. Ohio (1989), 489 U.S. 1071, 109 S.Ct. 1356, 103 L.Ed.2d 823, rehearing denied, 492 U.S. 927, 109 S.Ct. 3268, 106 L.Ed.2d 612.

On August 14, 1991, the court of appeals affirmed the trial court's denial of Beuke's petition for postconviction relief. We then denied Beuke's motion in support of jurisdiction appealing that judgment. State v. Beuke (1992), 62 Ohio St.3d 1496, 583 N.E.2d 968, rehearing denied, 63 Ohio St.3d 1407, 585 N.E.2d 428.

On December 1, 1992, the court of appeals denied Beuke's application for delayed reconsideration pursuant to State v. Murnahan, supra. We affirmed the judgment of the court of appeals (1993), 67 Ohio St.3d 1500, 622 N.E.2d 649, rehearing denied, 68 Ohio St.3d 1418, 624 N.E.2d 192.

On February 9, 1994, we denied Beuke's motion to reinstate his appeal. On February 14, 1994 we revoked his prior stay of execution and set a new execution date of May 16, 1994. Beuke filed a petition for a writ of certiorari in the Supreme Court of the United States on March 22, 1994.

4. Case No. 86-1130, William Zuern.

A jury convicted William Zuern of the 1984 aggravated murder of Phillip Pence. The trial court imposed a sentence of death. In June 1986, the court of appeals affirmed Zuern's conviction and sentence. We affirmed the judgment of the court of appeals on direct appeal in August 1987. 32 Ohio St.3d 56, 512 N.E.2d 585. The Supreme Court of the United States denied Zuern's petition for a writ of certiorari from this judgment. Zuern v. Ohio (1988), 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 872, rehearing denied, 485 U.S. 972, 108 S.Ct. 1252, 99 L.Ed.2d 449.

On December 4, 1991, the court of appeals affirmed the trial court's dismissal of his petition for postconviction relief. We overruled a motion for jurisdiction appealing from that judgment. State v. Zuern (1991), 63 Ohio St.3d 1458, 590 N.E.2d 752, rehearing denied, 64 Ohio St.3d 1406, 591 N.E.2d 1249.

Zuern initiated a collateral action under R.C. 149.43 to gain access to certain records of the Hamilton County Sheriff. That litigation concluded in 1990, when we affirmed the judgment of the court of appeals mandating the release of certain records. State ex rel. Zuern v. Leis (1990), 56 Ohio St.3d 20, 564 N.E.2d 81.

On September 17 1992, Zuern filed a motion in this court to reinstate his direct appeal. The state in response filed a motion to dismiss, which this court granted on November 18, 1992. 65 Ohio St.3d 1455, 602 N.E.2d 251. On December 2, 1992, we overruled Zuern's motion for delayed appeal and memorandum in support of jurisdiction. 65 Ohio St.3d 1463, 602 N.E.2d 1172. We last set Zuern's execution date for October 5, 1992.

5. Case No. 86-1499, Billy Joe Sowell.

A three-judge panel convicted Sowell of the 1983 aggravated murder of Calvert Graham and sentenced him to death. The court of appeals affirmed the conviction and sentence. We rejected Sowell's sixteen propositions of law and affirmed its judgment. State v. Sowell (1988), 39 Ohio St.3d 322, 530 N.E.2d 1294, rehearing denied, 40 Ohio St.3d 710, 534 N.E.2d 851. Sowell applied for a writ of certiorari in the Supreme Court of the United States, which was denied. Sowell v. Ohio (1989), 490 U.S. 1028, 109 S.Ct. 1766, 104 L.Ed.2d 201, rehearing denied, 490 U.S. 1096, 109 S.Ct. 2444, 104 L.Ed.2d 999.

Sowell filed a petition for postconviction relief, which the trial court denied. The court of appeals affirmed on June 26, 1991. 73 Ohio App.3d 672, 598 N.E.2d 136. We rejected Sowell's effort to appeal the judgment of the court of appeals in 1991. 62 Ohio St.3d 1456, 579 N.E.2d 1394, rehearing denied, 62 Ohio St.3d 1485, 581 N.E.2d 1391.

Sowell filed a motion for delayed reconsideration in the court of appeals pursuant to State v. Murnahan, supra, which was denied on October 1, 1992. We affirmed the judgment of the court of appeals on November 17, 1993. 67 Ohio St.3d 1500, 622 N.E.2d 649, rehearing denied, 68 Ohio St.3d 1418, 624 N.E.2d 192.

On March 9, 1994, we revoked his stay of execution and set a new execution date for June 7, 1994. Sowell filed a petition for a writ of certiorari in the Supreme Court of the United States on March 22, 1994.

6. Case No. 86-1597, Albert Holloway.

On August 30, 1984, a grand jury indicted Albert Holloway for the aggravated murder of eighty-four-year-old Clara Wilson. Ultimately, a jury found Holloway guilty and the trial court imposed a sentence of death. The court of appeals affirmed his sentence and conviction. State v. Holloway (July 23, 1986), Hamilton App. No. C-840871, unreported. In 1988, we affirmed Holloway's conviction. 38 Ohio St.3d 239, 527 N.E.2d 831, rehearing denied (1989), 44 Ohio St.3d 716, 542 N.E.2d 1113. Holloway sought further review by the United States Supreme Court, which denied certiorari in Holloway v. Ohio (1989), 492 U.S. 925, 109 S.Ct. 3261, 106 L.Ed.2d 606.

Having exhausted his direct appeals, Holloway filed a petition for postconviction relief, which was denied by the trial court and affirmed by the court of appeals. (Jan. 29, 1992), Hamilton App. No. C-900850, unreported. Thereafter, we declined to accept jurisdiction. State v. Holloway (1992), 64 Ohio St.3d 1417, 593 N.E.2d 7, rehearing denied, 64 Ohio St.3d 1445, 596 N.E.2d 474.

Holloway then pursued his Murnahan appeal, which we ultimately denied in 1993, 67 Ohio St.3d 1485, 621 N.E.2d 407,

rehearing denied, 68 Ohio St.3d 1412, 623 N.E.2d 568. We likewise rejected Holloway's motion to reinstate. State v. Holloway, (1993), 67 Ohio St.3d 1487, 621 N.E.2d 409, rehearing denied, 68 Ohio St.3d 1411, 623 N.E.2d 567.

On February 2, 1994, we set Holloway's execution date for May 3, 1994.

7. Case No. 87-243, Dewaine Poindexter.

Dewaine Poindexter's aggravated murder trial concluded on May 15, 1985. The jury recommended the death sentence and the trial court concurred. The court of appeals affirmed Poindexter's convictions and sentence in all respects. State v. Poindexter (Dec. 24, 1986), Hamilton App. No. C-850394, unreported. We rejected Poindexter's sixteen propositions of law and affirmed the judgment of the court of appeals in State v. Poindexter (1988), 36 Ohio St.3d 1, 520 N.E.2d 568. The United States Supreme Court denied certiorari. Poindexter v. Ohio (1988), 488 U.S. 916, 109 S.Ct. 272, 102 L.Ed.2d 261, rehearing denied (1989), 489 U.S. 1047, 109 S.Ct. 1181, 103 L.Ed.2d 247.

Thereafter, Poindexter pursued his postconviction remedies. The trial court denied his petition, and the court of appeals affirmed. (Mar. 6, 1991), Hamilton App. No. C-890734, unreported. Thereafter, we declined to accept jurisdiction. State v. Poindexter (1991), 61 Ohio St.3d 1430, 575 N.E.2d 218. On October 27, 1993, we dismissed Poindexter's Murnahan appeal. 67 Ohio St.3d 1485, 621 N.E.2d 407, rehearing denied, 68 Ohio St.3d 1412, 623 N.E.2d 568. Poindexter's motion for delayed reinstatement was completed when we denied rehearing in State v. Poindexter (1993), 68 Ohio St.3d 1411, 623 N.E.2d 567.

Five times we have set a date for Poindexter's execution, the last of which was March 15, 1994.

8. Case No. 87-447, Jerome Henderson.

Jerome Henderson was convicted of aggravated murder and sentenced to death for the March 3, 1985 multiple stabbing of Mary Acoff. The court of appeals affirmed his conviction and death sentence, and we affirmed in State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, rehearing denied, 39 Ohio St.3d 722, 534 N.E.2d 358. The United States Supreme Court declined to accept jurisdiction in Henderson v. Ohio (1989), 489 U.S. 1072, 109 S.Ct. 1357, 103 L.E.2d 824, rehearing denied, 490 U.S. 1042, 109 S.Ct. 1947, 104 L.Ed.2d 417.

We rejected Henderson's Murnahan appeal in 1993, 67 Ohio St.3d 1485, 621 N.E.2d 407, rehearing denied, 68 Ohio St.3d 1412, 623 N.E.2d 568. Henderson's motion to reinstate his appeal was similarly denied on October 27, 1993. 67 Ohio St.3d 487, 621 N.E.2d 409, rehearing denied, 68 Ohio St.3d 1411, 623 N.E.2d 567.

Henderson's fifth execution date was set for March 15, 1994.

9. Case No. 88-1079, John R. Hicks.

John R. Hicks was convicted and sentenced to death for the August 2, 1985 murder of his five-year-old stepdaughter and her maternal grandmother. We affirmed his conviction and death sentence. State v. Hicks (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030, rehearing denied, 44 Ohio St.3d 706, 541 N.E.2d 626. His direct appeal concluded on March 19, 1990 when the United

States Supreme Court denied jurisdiction. Hicks v. Ohio (1990), 494 U.S. 1038, 110 S.Ct. 1502, 108 L.Ed.2d 636.

Hicks then sought postconviction relief. The court of appeals affirmed the dismissal of his petition on January 29, 1993, Hamilton App. No. C-910341, unreported, and we denied his jurisdictional motion. State v. Hicks (1993), 67 Ohio St.3d 1408, 615 N.E.2d 1043.

Hicks then applied for delayed reconsideration under State v. Murnahan, but on October 27, 1993, we affirmed the decision of the court of appeals denying relief. 67 Ohio St.3d 1485, 621 N.E.2d 407, rehearing denied, 68 Ohio St.3d 1412, 623 N.E.2d 568. That same date, we rejected Hicks's motion for reinstatement of his direct appeal. State v. Hicks (1993), 67 Ohio St.3d 1487, 621 N.E.2d 409, rehearing denied, 68 Ohio St.3d 1411, 623 N.E.2d 568.

We last set Hicks's execution date for March 15, 1994.

10. Case No. 88-1286, Derrick Jamison.

On October 12, 1985, a jury found Derrick Jamison guilty of the aggravated murder of Gary Mitchell. Following the jury's death penalty recommendation, the trial court sentenced him to death. Jamison appealed, and the court of appeals affirmed his conviction and sentence. State v. Jamison (Feb. 17, 1988), Hamilton App. No. C-850753, unreported. We also affirmed Jamison's conviction and death sentence. State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, rehearing denied, 50 Ohio St.3d 712, 553 N.E.2d 1368. Jamison sought review by the United States Supreme Court, which denied his petition for a writ of certiorari. Jamison v. Ohio (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.

Jamison's postconviction proceedings concluded on April 14, 1993, when we refused to accept jurisdiction. 66 Ohio St.3d 1459, 610 N.E.2d 423, rehearing denied, 66 Ohio St.3d 1490, 612 N.E.2d 1245. His Murnahan appeal was dismissed when we overruled his jurisdictional motion in State v. Jamison (1993), 66 Ohio St.3d 1456, 610 N.E.2d 421.

We last set Jamison's execution date for March 15, 1994.

The causes are now before this court upon motions to prohibit filing of further pleadings in courts of Ohio without leave of the Ohio Supreme Court.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and William E. Breyer, Assistant Prosecuting Attorney, for appellee in case Nos. 86-193, 86-512, 86-642 and 86-1130.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Christian J. Schaefer, Assistant Prosecuting Attorney, for appellee in case Nos. 86-1499, 87-243, 87-447 and 88-1079.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and L. Susan Laker, Assistant Prosecuting Attorney, for appellee in case No. 86-1597.

Joseph T. Deters, Hamilton County Prosecuting Attorney, William E. Breyer and Christian J. Schaefer, Assistant Prosecuting Attorneys, for appellee in case No. 88-1286.

David H. Bodiker, Ohio Public Defender, Dale A. Baich, Cynthia A. Yost and Kevin L. Fahey, Assistant State Public Defenders, for appellant Steffen.

David H. Bodiker, Ohio Public Defender, Joann Bour-Stokes and Richard J. Vickers, Assistant State Public Defenders, for

appellant Byrd.

David H. Bodiker, Ohio Public Defender, and Randall L. Porter, Assistant State Public Defender; and Kenneth Murray, for appellant Beuke.

David H. Bodiker, Ohio Public Defender, and Jane P. Perry, Assistant State Public Defender, for appellant Zuern.

David H. Bodiker, Ohio Public Defender, and Pamela Prude-Smithers, Assistant State Public Defender; and Michael Siegler, for appellant Sowell.

David H. Bodiker, Ohio Public Defender, Jane P. Perry and Linda E. Prucha, Assistant State Public Defender, for appellant Holloway.

David H. Bodiker, Ohio Public Defender, and William S. Lazarow, Assistant State Public Defender, for appellants Poindexter and Hicks.

Reinhart Law Office and Harry R. Reinhart; Simmons, Meyer & Kort and Gerald G. Simmons, for appellant Henderson.

David H. Bodiker, Ohio Public Defender, Randall L. Porter and J. Joseph Bodine, Jr., Assistant State Public Defenders, for appellant Jamison.

Lee Fisher, Attorney General, Richard Cordray, State Solicitor, and Simon B. Karas, Deputy Chief Counsel, urging granting of motion in case No. 86-512.


Moyer, C.J.    The constitutions and courts of our country have established procedural safeguards reflecting our society's concern for the rights of citizens accused of committing crimes.  When those safeguards are used to thwart judgments rendered pursuant to the procedures, it is predictable that citizens will lose confidence in the ability of the criminal justice system to enforce its judgments.  The propriety of the ultimate criminal sentence -- the death penalty -- has been and will continue to be a subject of vigorous and passionate debate.  The death penalty evokes the full spectrum of human reason, emotions and moral beliefs.

Whatever one's views regarding capital punishment, the reality is that some thirteen years ago the General Assembly adopted a death penalty as the public policy of this state. The courts have declared the law to be constitutional; this court has affirmed eighty-seven death penalties, and the law has not yet been fully implemented.  That fact creates doubt about the ability of the justice system to carry out the death penalty and, perhaps even more importantly, a perception that the entire criminal justice system is not working.  Inaccurate as those perceptions are, they do persist.

Ohio's present death penalty statute was enacted in 1981, following the United States Supreme Court's decision in Gregg v. Georgia (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859.  Convicted persons have engaged in sometimes ingenious, sometimes frivolous courses of conduct that have successfully thwarted imposition of the death sentence.  The judiciary has participated in this endeavor by adhering to procedures intended to ensure that every effort is made to protect due process and to determine guilt.

Herein lies the internal conflict that death row inmates have seized upon and used to their advantage.  We, as a society, are justifiably tentative about imposing death as a

punishment for crimes.  Having assumed the power to take life, we have striven for a level of assurance in our decisions that is probably not humanly possible.  We have created a web of procedures so involved that they threaten to engulf the penalty itself.  We arrive at a point, however, where greater certitude is not reasonably possible.  There comes a time where the possibility that something else can be discovered approaches the vanishing point.  Then we must end our inquiry and act upon the conclusion we have reached.  Procrastination will not satisfy the soul.

In Ohio, many death penalty actions are reaching the point of judicial saturation.  As in the cases presently before us, the criminal justice system has more than satisfied the defendants' constitutional rights to due process and fair trials.  Their convictions have been viewed and reviewed.

In each of the ten cases before us, we have set or been asked to set an execution date.  State review has effectively been exhausted, and the judiciary's role should now be to accept the decision reached by so many.  The prosecution requests that the defendants herein be prohibited from filing any new state court pleadings without first obtaining leave of this court.  We do not believe it to be within the court's power to prohibit all filings; however, we do have the constitutional and statutory power to prohibit further stays of execution ordered by this court except upon a showing of good cause.

I

The relief requested by the state is unprecedented and extraordinary.  The reasons to grant the relief are compelling.  We can and do hereby grant that relief to the extent allowed by the Constitution and statutes of Ohio.

Section 2(B)(1)(f), Article IV of the Constitution of Ohio grants original jurisdiction to this court "[i]n any cause on review as may be necessary to its complete determination."  We have interpreted this provision to authorize judgments in this court that are necessary to achieve closure and complete relief in actions pending before the court.  State ex rel. Polcyn v. Burkhart (1973), 33 Ohio St.2d 7, 62 O.O.2d 202, 292 N.E.2d 883 (ordering Clerk of the Toledo City Council to correct initiative proposition to allow inclusion on ballot, because existing statutory procedures did not authorize appellant board of elections to make corrections); State ex rel. Owens v. Campbell (1971), 27 Ohio St.2d 264, 56 O.O.2d 158, 272 N.E.2d 116, overruled on other grounds, State v. Thomas (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897  (entering judgment ordering prison warden to release appellant-prisoner, despite failure of appellant to join warden as nominal party).  We conclude from these cases that Section 2(B)(1)(f), Article IV of the Ohio Constitution authorizes this court to enter such judgments in causes it hears on review as are necessary to provide a complete and final determination thereof.

We have exercised our original jurisdiction conferred by Section 2(B)(1), Article IV to prevent the abuse of the trial and appellate courts by repeated and vexatious lawsuits.  Thus, we issued a peremptory writ of prohibition to prevent a trial court from proceeding in a suit in which the plaintiffs were wrongfully attempting to relitigate claims and issues that had

already been decided adversely to them.  State ex rel. Stark v. Summit Cty. Court of Common Pleas (1987), 31 Ohio St.3d 324, 31 OBR 599, 511 N.E.2d 115.  We emphasized that prohibition was a writ to be used with great caution and only in the presence of extraordinary circumstances.  Nevertheless, we concluded that the plaintiffs' actions in that case constituted such circumstances.

We reached a similar holding in Commercial Savings Bank v. Wyandot Cty. Court of Common Pleas (1988), 35 Ohio St.3d 192, 519 N.E.2d 647.  In that case, certain individuals had initiated numerous repetitive civil actions seeking the same or related relief.  In addition, these persons had initiated numerous actions against the judges involved in their cases, alleging bias and conspiracies to deny their constitutional rights.  We concluded from this pattern of behavior that these persons were "attempting to use the legal system to both harass the relators and stall the judicial process."  Id. at 193, 519 N.E.2d at 649.  We consequently issued a writ prohibiting the court of common pleas from proceeding in any legal actions that had been or might be filed arising from the legal and factual issues involved in the cases that were currently pending.1

II

In addition to the powers granted by Section 2(B)(1), Article IV of the Constitution of Ohio, Section 5(A)(1), Article IV grants this court general supervisory power over the courts of Ohio.

Section 5(A)(1) provides: "In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state.  Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court."

Pursuant to this power, the Supreme Court of Ohio has promulgated the Rules of Superintendence for Courts of Ohio.  The preface to the Rules of Superintendence states: "Delay and inconsistency in the disposition of matters in the courts of Ohio are an ongoing concern in the administration of justice.  It is to be remembered that the courts are created not for the convenience or benefit of the judges and lawyers, but to serve the litigants and the interests of the public at large.  When cases are unnecessarily delayed, the confidence of all people in the judicial system suffers.  The confidence of the people in the ability of our system of government to achieve liberty and justice under law for all is the foundation upon which the American system of government is built."

We have stated that the Rules of Superintendence are designed "(1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts."  State v. Singer (1977), 50 Ohio St.2d 103, 109-110, 4 O.O.3d 237, 240-241, 362 N.E.2d 1216, 1220.

We have recognized the jurisdiction conferred upon this court by the Ohio Constitution confers also "such inherent jurisdiction as is necessary to enable it to function under the

Constitution." Tuck v. Chapple (1926), 114 Ohio St. 155, 156, 151 N.E. 48, 49. We further held, "[c]ourts possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions." In re Furnishings for Courtroom Two (1981), 66 Ohio St.2d 427, 430, 20 O.O.3d 367, 369, 423 N.E.2d 86, 88 (citing State ex rel. Foster v. Bd. of Cty. Commrs. [1968], 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884, paragraph two of the syllabus).

We have guarded our general supervisory power over the court system from encroachment by the lower courts. In Melling v. Stralka (1984), 12 Ohio St.3d 105, 12 OBR 149, 465 N.E.2d 857, a municipal court judge issued an order prohibiting the city solicitor, law director, assistants thereof, prosecutors, or assistants thereof from representing any defendants in criminal matters in municipal court. We held that the judge lacked the authority to issue such an order, reasoning that the order established, in effect, a "disciplinary rule" limiting the ability of certain members of the bar to practice before the court. Citing Sections 2(B)(1) and 5(B), Article IV of the Ohio Constitution, we held that such disciplinary rules were "within the exclusive authority of the Supreme Court, and they may not be promulgated by the trial or appellate courts of this state." Id. at 107, 12 OBR at 151, 465 N.E.2d at 859.

Concurrent with this court's supervisory power is our responsibility to assure finality to judgments. The purpose of a court is to resolve controversies, not to prolong them. When issues are constantly relitigated, there is no resolution and hence no finality. Such is the case with some death penalty appeals. The system threatens to devour itself unless the only tribunal with the ultimate authority to do so acts to take decisive action.

III

A criminal conviction rebuts the presumption of innocence, and a criminal no longer has the constitutional right to bail after conviction. Coleman v. McGettrick (1965), 2 Ohio St.2d 177, 31 O.O.2d 326, 207 N.E.2d 552; In re Thorpe (1936), 132 Ohio St. 119, 7 O.O. 224, 5 N.E.2d 333. Nor do trial courts have the inherent power to suspend execution of sentence in a criminal case. Mun. Court of Toledo v. State ex rel. Platter (1933), 126 Ohio St. 103, 184 N.E. 1, paragraph three of the syllabus. Suspension of execution must be authorized by statute. Id.

Our practice has been to set execution dates ninety days from the date of the entry affirming the judgment of the court of appeals pursuant to our authority under R.C. 2949.22(C). Our power to suspend during the pendency of appeal is the same as the power of the trial court or the court of appeals. R.C. 2953.10.

Furthermore, discretionary authority to suspend execution is vested in this court during postconviction proceedings. R.C. 2953.21(H). A postconviction stay, unlike a direct-appeal stay, is not a constitutional right. Indeed, postconviction state collateral review itself is not a constitutional right, even in capital cases. Murray v. Giarratano (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1; Pennsylvania v. Finley (1987), 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539. A postconviction proceeding is not an appeal of a criminal

conviction, but, rather, a collateral civil attack on the judgment.  See State v. Crowder (1991), 60 Ohio St.3d 151, 573 N.E.2d 652.  Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal.  State v. Duling (1970), 21 Ohio St.2d 13, 50 O.O.2d 40, 254 N.E.2d 670; State v. Perry (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

Among the last judicial actions taken in the criminal appeals of these ten cases are the entries of this court setting the dates of execution.  It is these entries that must be stayed regardless of the forum in which the case further challenging the conviction or sentence arises.  A trial court or court of appeals may stay its own postconviction judgment, but it may not stay the judgment of this court setting the date for execution.  This court is vested with singular authority within the state system to stay its own judgments.

We therefore conclude that an execution set by the Supreme Court of Ohio may not be stayed by any other state court.

R.C. 2953.21 creates the remedy of postconviction relief for those convicted of crimes.  R.C. 2953.23(A) provides that "*** the court may, in its discretion and for good cause shown, entertain a second petition or successive petitions for similar relief on behalf of the petitioner based upon the same facts or on newly discovered evidence."  The effect of the "good cause" requirement of R.C. 2953.23(A) is to place the entertainment of a successive petition for postconviction relief within the sound discretion of the trial court.  See State ex rel. Workman v. McGrath (1988), 40 Ohio St.3d 91, 532 N.E.2d 105.

IV

The Supreme Court of the United States has recently addressed the problem of multiple successive federal habeas corpus petitions.  In McCleskey v. Zant (1991), 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517, the Supreme Court clarified the doctrine of abuse of the writ, and clearly laid out the circumstances under which a federal habeas corpus petitioner could bring a successive habeas claim.

The court adopted the "cause and prejudice" standard for determining whether a federal court could entertain a successive habeas petition.  Under this standard, the petitioner must show "'some objective factor external to the defense impeded counsel's efforts'" to raise the claim in his prior petition.  Id. at 493, 111 S.Ct. at 1470, 113 L.Ed.2d at 544.  Interference by public officials, a showing that the factual or legal basis for the claim was not reasonably available, or the ineffective assistance of counsel could constitute such just cause.  Id. at 493-494, 111 S.Ct. at 1470, 113 L.Ed.2d at 544.  After the petitioner has shown such cause, he must then show actual prejudice flowing therefrom.  Id. at 494, 111 S.Ct. at 1470, 113 L.Ed.2d at 544.

The cause and prejudice standard also includes a fail-safe.  When a petitioner is unable to make a showing of just cause for failure to raise the claim previously, a federal court may nevertheless entertain the petition in a narrow class of cases where there exist extraordinary circumstances that have probably caused the conviction of one who is not guilty of the crime.  The court described this class of cases as those "implicating a fundamental miscarriage of justice."  Id. at

494, 111 S.Ct. at 1470, 113 L.Ed.2d at 545.

The reasoning behind the Supreme Court's adoption of the cause and prejudice standard in federal habeas cases echoes strikingly this court's concerns as articulated in the preamble to the Rules of Superintendence, supra. The court noted that the erosion of the finality of judgments in criminal cases undermines the deterrent effect of criminal law. Id. at 490-491, 111 S.Ct. at 1468, 113 L.Ed.2d at 542 (citing Teague v. Lane [1989], 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334). A lax standard for habeas corpus review might give litigants incentives to withhold claims in order to manipulate the system and create disincentives to present fresh claims. Id., 499 U.S. at 491-492, 111 S.Ct. at 1469, 113 L.Ed.2d at 543. The court summarized these principles in an eloquent statement taken from the Harvard Law Review:

"A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands. *** There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners (1963), 76 Harv.L.Rev. 441, at 452-453.

The Supreme Court acknowledged a state's inherent power to impose finality on its judgments. "Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of a State to pass laws means little if the State cannot enforce them." Id., 499 U.S. at 491, 111 S.Ct. at 1468, 113 L.Ed.2d at 543.

Based on the aforementioned authorities from this court and the Supreme Court of the United States and acknowledging the provisions of R.C. 2953.21(H), we conclude that this court possesses the authority to enforce the finality of judgments in criminal cases. We will do so by prohibiting, in certain cases, the granting of any further stays of execution in capital cases except upon a showing, in this court, of good cause for allowing the petitioner to go forward in a postconviction proceeding.

We therefore hold the following: When a criminal defendant has exhausted direct review, one round of postconviction relief, and one motion for delayed reconsideration under State v. Murnahan in the court of appeals and in the Supreme Court, any further action a defendant files in the state court system is likely to be interposed for purposes of delay and would constitute an abuse of the court system. In order to prevent such abuse, this court will fashion appropriate relief upon application by the prosecuting authority.

The defendant wishing to stay his execution to engage further state court proceedings must petition this court for such a stay. The petitioner must then satisfy the "cause and prejudice" standard as articulated in McCleskey, supra. We believe that the McCleskey standard properly balances the need for finality of judgments against the need for protection of those defendants who can demonstrate either cause for failing previously to raise a ground for litigation or circumstances

constituting a fundamental miscarriage of justice, if the conviction were to stand.

Having concluded that the trial courts and courts of appeals in these cases have no authority to enter stays of execution of the orders of this court, we enter the following order in the interest of expediting justice. The motions by appellee to prohibit filing of further pleadings are sustained to the extent that the trial courts and courts of appeals may issue no orders affecting the stays of execution. It is further ordered that a stay of the orders of any Ohio courts setting the dates for execution for the appellants herein are hereby denied.

Motions granted.

A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTE:

1 This court did not, however, grant all relief requested by the relators. Noting that this court lacks original jurisdiction in injunction, it declined to issue such an injunction prohibiting the litigants from filing future actions. In doing so, the court followed the teaching of State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, paragraph four of the syllabus. There, we held that a complaint for a writ of mandamus that in reality requested injunctive relief must be dismissed for want of jurisdiction because neither the court of appeals nor the Supreme Court possesses original injunctive power.