OPINION
{¶ 1} Defendant-appellant, Shawn L. Sowell ("appellant"), appeals from the September 5, 2007 judgment of the Franklin County Court of Common Pleas, in which that court denied appellant's April 2, 2007 petition for postconviction relief.
 {¶ 2} On May 25, 2005, the Franklin County Grand Jury indicted appellant on one count of aggravated murder, a violation of R.C.2903.01, with a firearm specification. The *Page 2 
following testimony was adduced at trial. On April 18, 2005, at approximately 9:20 p.m., Jimon Jones ("Jones") was shot and killed at Kelly's Market on the corner of North 4th Street and East 11th Avenue in Columbus. Shortly before the shooting, store clerk Ahman Fares ("Fares") was standing outside the market talking with Jones, and the two were commenting on the distinctive rims on an SUV parked nearby. Fares observed a man approach the SUV on foot and conduct a conversation with its occupant. The pedestrian then left the SUV and walked into the market. At that point, the SUV pulled away.
 {¶ 3} Upon entering the market, the pedestrian purchased a black-and-gold cigar. Fares waited on him face-to-face, taking his money and returning to him his change. Jones entered the market as the pedestrian was exiting. As the two passed each other, the pedestrian pulled out a gun, shot Jones, and left the store. No one actually witnessed the shooter pull out a gun and shoot Jones. Fares testified that he did not see the shooting, but he heard six shots and ducked for cover. He testified that he was "pretty sure" that the man to whom he had sold the black-and-gold cigar was the shooter, because it happened too fast to have been anyone else. He described the shooter as being a dark male, five feet 11 inches to six feet tall, wearing a green shirt, dark pants and a shirt with a yellow image on it, and having a full beard. Fares was not able to identify appellant as the shooter, either while viewing two separate photographic arrays, or in the courtroom.
 {¶ 4} Anthony Crump ("Crump") was the driver of the SUV that Fares observed shortly before the shooting. Fares testified that he noticed the SUV because it had two sets of headlights and unique wheel rims. Crump testified that he was "slightly familiar" *Page 3 
with appellant from the neighborhood. On the night Jones was killed, Crump had been smoking and trying to buy marijuana with his cousin, Andre Brown ("Brown"). Crump testified that he had smoked several "blunts," or marijuana-filled cigars, that day. Then he and Brown smoked a cocaine-laced marijuana blunt. He admitted he was in a "drug-induced fog." Crump testified that, as he made his way to purchase marijuana from a dealer on 11th Avenue, he drove up North 4th Street and stopped on two separate occasions because he saw people he knew. He recalled stopping near Kelly's Market. He told police that he first saw appellant in the middle of the street. Crump did not recall whether he spoke to appellant, other than a brief exchange of "what's up?" He then turned onto 11th Avenue to make his drug purchase. He did not see what appellant did after the two spoke. Later, after dropping Brown off, he went to a bar and had several drinks. While at the bar, he saw a report about Jones' shooting on television. Police later questioned him after Fares identified Crump as having been parked near the market at the time of the shooting.
 {¶ 5} Crump testified that, during questioning, the police told him that he and Brown both matched the description of the shooter and they were going to get pinned for Jones' murder. Crump acknowledged that he did not give the police his own description of appellant, but was given one by police. Crump had known appellant for some time, but had never known him to have a full beard. He testified that he did not see appellant with a gun that evening. On cross-examination, he acknowledged that he told police anything they wanted to hear because he was fearful for himself and his cousin. He also testified that he was not sure about anything he had told the police. *Page 4 
 {¶ 6} At trial, the state introduced recordings of appellant's telephone calls made while he was in jail awaiting trial. The tapes revealed that appellant initially said he had been nowhere in the area of Kelly's Market at the time of the shooting, then he said he had been with a person named Brian at Suzy Q's, a nearby pool hall. Later he said he was with a number of people at a backyard cookout. Then he said he had been on his front porch. He also criticized Crump for giving the police information, saying that Crump could have torpedoed the investigation by denying he had ever seen appellant that night.
 {¶ 7} The trial court granted appellant's Crim.R. 29 motion for acquittal as to the aggravating circumstance of prior calculation and design, thereby reducing the charge to murder. At the close of the evidence, and following a Howard instruction, the jury found appellant guilty of murder and of the firearm specification. The trial court sentenced appellant to 15 years to life for the murder count, plus three years for the firearm specification.
 {¶ 8} Appellant's direct appeal of his conviction is currently pending in this court in case No. 06AP-443. Meanwhile, on April 2, 2007, appellant filed his petition for postconviction relief. Therein, he asserted five claims: (1) ineffective assistance of counsel for failing to object to the ejection of certain spectators from the courtroom; (2) ineffective assistance of counsel for failing to request to voir dire the jury after a spectator allegedly threatened a witness; (3) void conviction due to the jury being fearful of appellant; (4) void conviction because the trial court failed to voir dire the jury; and (5) ineffective assistance of counsel for failing to call witnesses to assert an alibi. In support of his petition, appellant attached the affidavits of Joseph Sowell, Stephan Sowell, Muhammed Diab, and Tia Conley. *Page 5 
 {¶ 9} By judgment entry journalized September 5, 2007, the trial court made findings of fact and conclusions of law and dismissed appellant's petition without a hearing. The court dismissed appellant's first four claims as barred by res judicata and on their merits, and it dismissed his fifth claim on the merits. Appellant timely appealed and advances four assignments of error for our review, as follows:
 ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN DISMISSING CLAIM ONE OF SOWELL'S POST-CONVICTION PETITION WHERE SUFFICIENT OPERATIVE FACTS WERE PRESENTED TO MERIT RELIEF OR, AT LEAST WARRANT, AN EVIDENTIARY HEARING.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN DISMISSING CLAIM TWO OF SOWELL'S POST-CONVICTION PETITION WHERE SUFFICIENT OPERATIVE FACTS WERE PRESENTED TO MERIT RELIEF OR, AT LEAST WARRANT, AN EVIDENTIARY HEARING.
 ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED IN DISMISSING CLAIMS THREE AND FOUR OF SOWELL'S POST-CONVICTION PETITION WHERE SUFFICIENT OPERATIVE FACTS WERE PRESENTED TO MERIT RELIEF OR, AT LEAST WARRANT, AN EVIDENTIARY HEARING.
 ASSIGNMENT OF ERROR IV
 THE TRIAL COURT ERRED IN DISMISSING CLAIM FIVE OF SOWELL'S POST-CONVICTION PETITION WHERE SUFFICIENT OPERATIVE FACTS WERE PRESENTED TO MERIT RELIEF OR, AT LEAST WARRANT, AN EVIDENTIARY HEARING.
 {¶ 10} The postconviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. State v.Steffen, 70 Ohio St.3d 399, 410, 1994- *Page 6 
Ohio-111, 639 N.E.2d 67. "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record.State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233, 2000 Ohio App. LEXIS 6129, at *5. Postconviction relief is not a constitutional right, but rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute. State v. Calhoun,86 Ohio St.3d 279, 281, 1999-Ohio-102, 714 N.E.2d 905. A postconviction petition does not provide a petitioner a second opportunity to litigate his or her conviction. State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, ¶ 32.
 {¶ 11} Appellant's right to postconviction relief arises from R.C.2953.21. Subparagraph (A)(1) of that statute provides, in relevant part:
 Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 12} A petitioner who seeks to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing. State v. Jackson (1980), 64 Ohio St.2d 107, 110, 18 O.O.3d 348,413 N.E.2d 819. "[P]ursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient *Page 7 
operative facts to establish substantive grounds for relief." State v.Calhoun, 86 Ohio St.3d 279, 291, 1999-Ohio-102, 714 N.E.2d 905. We apply an abuse of discretion standard when reviewing a trial court's decision to deny a postconviction petition without a hearing. State v.Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, citingCalhoun at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,5 OBR 481, 450 N.E.2d 1140.
 {¶ 13} In his first assignment of error, appellant argues that the trial court erred in dismissing his first claim for postconviction relief without a hearing. His first claim is that his attorney was ineffective for failing to assert his right to a public trial by objecting to the ejection of spectators. For support of this claim, appellant offered the affidavits of Joseph and Stephan Sowell, along with a copy of a portion of the trial transcript.
 {¶ 14} In his affidavit, appellant's father, Joseph, describes how he was ejected from the courtroom for laughing during testimony, and that a friend of the family was ejected for wiping sweat from his face. He states that he has "every reason to believe that the jury was aware of this incident * * *"[1] He avers that he told appellant's attorney about these events, but the attorney did nothing. In his affidavit, appellant's brother, Stephan, states that a deputy sheriff removed him from the courtroom as the jury was departing, because, according to the deputy, he had made a gesture toward a witness that simulated the shooting of a gun. Stephan Sowell denies that he ever made such a gesture. Stephan Sowell states that the jury saw and heard him being removed from the *Page 8 
courtroom, but that appellant's attorney was unaware of these events.
 {¶ 15} The trial transcript reveals that, after Stephan Sowell was removed, the prosecutor made the court and appellant's counsel aware of Stephan Sowell's ejection, and the reason therefor. The prosecutor stated:
 Your Honor, I want to bring an issue to the court's attention and that is that Deputy Stewart indicated to me that during the point in time when Anthony Crump was on the witness stand and testifying before we broke, one of the members of defendant's family was sitting in the back of the courtroom going or indicating to him like this — towards the witness like this, like he was pointing with both fingers simulating like he had a weapon in his hand. The deputy threw that individual out of the courtroom, and I believe it was a family member of the defendant.[2]
 {¶ 16} At this point, appellant's counsel stated he would be "cautioning my people."[3] The court announced that Stephan Sowell would be "removed for the period of this trial"[4] and that "[a]nybody making any kind of gestures or anything like that or anything construed in that way, that person will be removed from the courthouse, not only from the courtroom, but from the courthouse."[5] Notably, this colloquy between counsel and the court did not contain any discussion of the jury having witnessed or overheard the ejection of any spectator.
 {¶ 17} The right to a public trial is set forth in the Sixth Amendment of the Constitution of the United States which provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *" In State v. Sanders (1998),130 Ohio App. 3d 92, 719 N.E.2d 619, the court explained: *Page 9 
 The right to a public trial has historically been recognized as a safeguard against possible infringements by the court against the accused. An open courtroom is necessary to preserve and support the fair administration of justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly. Also, a public trial allows the general public to see that the defendant is "fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." The right to a public trial is so important that a criminal defendant is not required to show specific prejudice to obtain relief from the constitutional violation.
(Citations omitted.) Id. at 96-97.
 {¶ 18} Nonetheless, the right to a public trial is not absolute and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension.State v. Cottrell, Cuyahoga App. No. 81356, 2003-Ohio-5806, ¶ 18, discretionary appeal not allowed, 101 Ohio St.3d 1491, 2004-Ohio-1293,805 N.E.2d 540, citing Brown v. Kuhlmann (C.A.2, 1998), 142 F.3d 529. "[T]he trial judge is responsible for the conduct of a trial and has discretion to issue reasonable orders excluding spectators in order to protect or to prevent intimidation of a witness." State v. Bayless
(1976), 48 Ohio St.2d 73, 109, 2 O.O.3d 249, 357 N.E.2d 1035, vacated in part on other grounds, Bayless v. Ohio (1978), 438 U.S. 911,98 S.Ct. 3135, 57 L.Ed.2d 1155.
 {¶ 19} Joseph Sowell's affidavit states that he informed appellant's trial attorney about the fact that he and another spectator had been ejected from the courtroom. However, he does not state when he informed counsel of this fact. If counsel was not made aware of the ejection until after trial, then he was not ineffective for failing to *Page 10 
address the issue during trial. Even if we read Joseph Sowell's affidavit to mean that he immediately informed trial counsel, the events that appellant's father describes do not rise to the level of a constitutional violation. The affidavits supporting a petition for postconviction relief must present information that rises to the level of a constitutional violation. State v. Calhoun, 86 Ohio St.3d 279, 284,1999-Ohio-102, 714 N.E.2d 905, citing State v. Perry (1967),10 Ohio St.2d 175, 30 O.O.2d 189, 226 N.E.2d 104. In order to present evidence of a constitutional violation based on ineffective assistance of counsel, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." (Emphasis sic.) Id. at 283, quoting State v.Jackson (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819, syllabus.
 {¶ 20} Moreover, because the exclusion of Stephan Sowell from the courtroom occurred on the record at trial, this alleged error could have been raised on direct appeal. For this reason, postconviction collateral attack on this ground is barred by res judicata. "Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal." State v. Steffen,70 Ohio St.3d 399, 410, 1994-Ohio-111, 639 N.E.2d 67.
 {¶ 21} For these reasons, the trial court did not err in dismissing appellant's first claim for relief without a hearing. Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} In his second assignment of error, appellant argues that the trial court erred in dismissing his second claim for relief. His second claim is that his trial counsel was *Page 11 
ineffective for failing to request that the court voir dire the jury to determine whether Stephan Powell had prejudiced any member by having allegedly made a threatening gesture toward witness Anthony Crump. (Petition, at 5-6.)
 {¶ 23} On appeal, appellant asserts that the mention in Joseph Powell's affidavit of his own ejection for laughing and of the ejection of another spectator for wiping his face, presents matters outside the record. However, careful review of appellant's petition for postconviction relief reveals that his second claim for relief was based solely upon the prejudice that might have resulted from Stephan Powell's allegedly threatening gesture. Because this alleged error, too, is reflected in the trial record, it could have been raised on direct appeal and is thus barred by res judicata. Accordingly, the trial court correctly dismissed it without a hearing. For this reason, the second assignment of error is overruled.
 {¶ 24} In his third assignment of error, appellant argues that the trial court erred in dismissing his third and fourth claims for relief. Appellant's third claim for relief is that his conviction is void because a fearful, non-impartial jury rendered it. Specifically, he argues that the jury was fearful because members of the jury witnessed the ejection of appellant's father and another individual, and the threatening gesture of appellant's brother. For support of this claim, appellant relied upon the affidavits of Joseph and Stephan Sowell. However, review of these affidavits reveals that appellant's father onlyspeculates that members of the jury witnessed and heard his and another's ejection from the gallery, but offers no evidence of this fact. Moreover, appellant's brother unequivocally denies having made any threatening gesture. If he never made the gesture, then the jury did not witness it. Appellant has presented no operative facts *Page 12 
supporting his argument that the jury was fearful and biased and, as such, the trial court correctly dismissed his third claim for relief without a hearing.
 {¶ 25} Appellant's fourth claim for relief is that his conviction is void because the trial court had an independent duty to voir dire the jury to determine whether any member had been "effected in any manner by alleged gestures by spectators, or actions or comments made by deputy sheriffs present in the courtroom and in the area outside the courtroom during the trial."[6] Again, appellant's evidence does not establish, but only speculates, that the jury was aware of the ejections of Joseph Sowell or the spectator who allegedly wiped his face. Moreover, Stephan Sowell denies having made any threatening gesture. Accordingly, appellant presented no operative facts sufficient to warrant a hearing on the issue whether the trial court had any duty to voir dire the jury about these events. Therefore, the trial court correctly dismissed appellant's fourth claim for relief.
 {¶ 26} For all of the foregoing reasons, appellant's third assignment of error is overruled.
 {¶ 27} In his fourth and final assignment of error, appellant argues that the trial court erred in dismissing his fifth claim for relief without a hearing. Appellant's fifth claim for relief is that his conviction is void because his counsel was ineffective for failing to call exculpatory witnesses. For support of this claim, appellant submitted the affidavits of Muhammed Diab and Tia Conley. Both Diab and Conley aver that they were present with appellant on April 18, 2005, at a birthday party for Conley held at Conley's home. They *Page 13 
aver that appellant cooked food on the grill, and the group ate and partied from a time when the sun was still out until late in the evening. They both aver that they were with appellant when they heard shots ring out at Kelly's Market. In addition, Conley avers that appellant did not leave her home until 1:00 or 2:00 a.m. the following morning, and that appellant did not have a beard on the date of the murder. Both affiants state that they are willing to testify to these facts. Noticeably absent from these affidavits is any assertion that appellant's trial counsel was aware that Diab or Conley possessed any of the facts to which they aver. Without any evidence that counsel had any knowledge of the existence of these alibi witnesses, appellant has not presented evidence warranting a hearing on the ineffective assistance of counsel claim in the fifth claim of his petition.[7] For these reasons, the trial court correctly dismissed appellant's fifth claim for relief without a hearing. As such, appellant's fourth assignment of error is overruled.
 {¶ 28} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and T. BRYANT, JJ., concur. T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Joseph Sowell Affidavit, ¶ 3.
[2] Ex. C attached to petition for postconviction relief.
[3] Ex. C attached to petition for postconviction relief.
[4] Ex. C attached to petition for postconviction relief.
[5] Ex. C attached to petition for postconviction relief.
[6] Petition for postconviction relief, at 7.
[7] The state argues that the claim based upon failure to call Conley is res judicata because Conley was identified as a possible alibi witness in the record of the trial court proceedings. We do not have this record before us, so we proceed solely based upon Conley's affidavit. However, if true, the state presents an alternative reason for the trial court to have dismissed this portion of the fifth claim for relief. *Page 1