O’Donnell, J.,
dissenting.
{¶ 31} I respectfully dissent.
*34 {¶ 32} In 1998, a jury convicted Douglas Prade of the murder of his ex-wife, Dr. Margo Prade. At trial, the prosecution presented evidence of a bite mark on Dr. Prade’s arm that the killer made by biting through her lab coat and blouse. DNA testing of biological evidence found on the lab coat identified only Dr. Prade’s DNA.
{¶ 33} In 2004, Prade applied for postconviction DNA testing of the biological evidence offered at trial, including the part of the lab coat that had covered the bite mark. However, the trial court concluded that R.C. 2953.74(A) barred retesting of the DNA on the lab coat because a prior definitive DNA test had been conducted, and that test excluded Prade as the source of the DNA. Prade failed to timely appeal that decision.
{¶ 34} In 2008, Prade filed a second application for DNA testing, contending that advances in testing technology permitted the discovery and identification of any DNA that Dr. Prade’s killer may have left on the lab coat. The trial court once again rejected his application on the basis that a prior definitive test had been conducted on this evidence and that the test had definitively excluded Prade as the source of that DNA. The court of appeals affirmed the denial of another DNA test on the lab coat, and Prade appealed that decision to this court.
{¶ 35} At issue in this appeal is whether the General Assembly intended for courts to consider technological advancements in DNA testing in determining whether a prior definitive DNA test has been conducted on the same biological evidence.
{¶ 36} R.C. 2953.74(A) provides: “If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the inmate seeks to have tested, the court shall reject the inmate’s application.”
{¶ 37} This case presents a straightforward question of statutory construction. As we explained in State v. Buehler, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, in construing statutes, “ ‘our paramount concern is the legislative intent in enacting the statute.’ Furthermore, ‘[i]n determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage.’ ” (Citation omitted.) Id. at ¶ 29, quoting State ex rel. Steele v. Morrissey, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21.
{¶ 38} Here, the General Assembly has not defined the word “definitive” for purposes of postconviction DNA testing. Thus, as we stated in State v. Anthony, 96 Ohio St.3d 173, 2002-Ohio-4008, 772 N.E.2d 1167, ¶ 11, an undefined term in a statute “must be given its plain and ordinary meaning.”
*35 {¶ 39} According to Webster’s Third New International Dictionary (1986) 592, the word “definitive” means “serving to supply a final answer, solution, or evaluation and to end an unsettled unresolved condition.” Accordingly, for purposes of R.C. 2953.74(A), a definitive DNA test is one that supplies a final answer in identifying the biological evidence tested.
{¶ 40} Notably, neither the plain meaning of the word “definitive” nor any other provision of the postconviction DNA testing statute authorizes the trial court to consider advances in testing technology to determine whether prior DNA tests were definitive. Moreover, if trial courts began to consider advances in testing technology, no test would ever be considered definitive, because the standards would continue to evolve and never reveal a final result. The finality of a conviction could therefore be undermined each time a new method of examination or technological advance occurred, even if the biological evidence had already been the subject of multiple postconviction DNA examinations. The General Assembly intended to preserve final judgments and never provided for the constant reexamination of DNA samples based on scientific advances.
{¶ 41} This construction of the statute is supported by the narrow remedy afforded inmates in seeking postconviction relief. As this court explained in State v. Steffen (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, postconviction review is not a constitutional right, and it provides only “a narrow remedy.” Because of the significant societal interest in the finality of judgments, the postconviction-relief statute provides only a limited opportunity to collaterally attack a conviction, an opportunity not intended to allow inmates to relitigate issues previously resolved at trial. See id. (explaining that res judicata applies to actions for posteonviction relief); State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 47 (noting that courts construe statutes establishing postconviction relief narrowly to uphold the societal interest in final judgments). As we stated in State v. Szefcyk (1996), 77 Ohio St.3d 93, 671 N.E.2d 233: “ ‘ “[Pjublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.” ’ ” Id. at 95, 671 N.E.2d 233, quoting Federated Dept. Stores, Inc. v. Moitie (1981), 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103, quoting Baldwin v. Iowa State Traveling Men’s Assn. (1931), 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244.
{¶ 42} This court should treat an inmate’s postconviction application for DNA testing no differently. Notably, in District Attorney’s Office for Third Judicial Dist. v. Osborne (2009), — U.S.-,-, 129 S.Ct. 2308, 2323, 174 L.Ed.2d 38, the Supreme Court of the United States declined to recognize a freestanding constitutional right to postconviction DNA testing. The court explained that any due process right of access to DNA evidence “must be analyzed in light of the *36 fact that [the inmate] has already been found guilty at a fair trial, and has only a limited interest in postconviction relief,” id. at 2320, and it recognized that resolving the dilemma of “how to harness DNA’s power to prove innocence without unnecessarily overthrowing the established system of criminal justice” is a “task [that] belongs primarily to the legislature,” id. at 2316.
Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney, for appellee.
Jones Day, David Booth Alden, and Ann Netzel; and Ohio Innocence Project, Mark A. Godsey, and David M. Laing, for appellant.
{¶ 43} In enacting R.C. 2953.71 et seq., the General Assembly took up this task, considered the public-policy questions raised by postconviction DNA testing, measured an inmate’s interest in proving actual innocence against the societal interest in the finality of judgments, and established a limited remedy affording postconviction DNA testing in cases where biological evidence has not been the subject of a prior definitive test. This court should not expand that remedy beyond the statute’s express terms. The legislature could have provided for courts to consider advances in testing technology in determining whether prior tests were definitive, yet it chose not to do so. Instead, by barring applications for retesting when there has been a prior definitive test, the legislature signaled its intent to uphold the finality of convictions.
{¶ 44} As the trial court found, the prior DNA test definitively identified the biological evidence as belonging to Dr. Prade and as excluding Douglas Prade as a source. Thus, this is not a case in which DNA tests were performed that produced no valid and scientifically reliable result. Rather, the polymerase chain reaction tests performed before trial supplied a final answer as to the source of the DNA found on Dr. Prade’s lab coat, and Prade had a full and fair opportunity to challenge any of the shortcomings of this DNA testing technique at trial.
{¶ 45} Because R.C. 2953.74 makes no provision for technological advancements in defining what constitutes a prior definitive test, and because the prior DNA tests were therefore definitive, Prade is barred from applying for postcon-viction DNA testing.
{¶ 46} For these reasons, I would abide by the General Assembly’s resolution of the competing public-policy concerns at issue here and hold that a prior DNA test may be considered definitive notwithstanding the development of new DNA testing techniques. Accordingly, I would affirm the decision of the court of appeals.
Delaney, J., concurs in the foregoing opinion.
*37 Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P., and Michele Hirshman, urging reversal for amicus curiae, The Innocence Network.