[Cite as *State v. Biggs*, 2013-Ohio-3333.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| JAY LEWIS BIGGS | : | Case No. 2013CA00009 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 2008CR0653



JUDGMENT:        Affirmed



DATE OF JUDGMENT:        July 29, 2013



APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

PAUL L. SCARSELLA        CARRIE WOOD
150 East Gay Street, 16th Floor        MARK GODSEY
Columbus, OH 43215        Ohio Innocence Project
       P.O. Box 210040
       Cincinnati, OH 45221-0040

CHRYSSA HARTNETT
110 Central Plaza South, Suite 510        ADAM VANHO
Canton, OH 44702-1413        137 South Main Street, Suite 201
       Akron, OH 44308

*Farmer, J.*

{¶1} On May 28, 2008, the Stark County Grand Jury indicted appellant, Jay Lewis Biggs, on two counts of aggravated murder with death penalty specifications in violation of R.C. 2903.01, two counts of murder in violation of R.C. 2903.02, one count of rape in violation of R.C. 2907.02, and one count of endangering children in violation of R.C. 2919.22. Said charges arose from the death of appellant's four month old daughter.

{¶2} A jury trial commenced on October 1, 2008. The jury found appellant guilty as charged, and recommended that appellant serve a term of life imprisonment without the possibility of parole. By judgment entry filed December 5, 2008, the trial court sentenced appellant to life in prison without parole. Appellant's conviction was affirmed on appeal. *State v. Biggs,* 5th Dist. Stark No. 2008CA00285, 2009-Ohio-6885. The Supreme Court of Ohio declined to hear an appeal. *State v. Biggs,* 125 Ohio St.3d 1438, 2010-Ohio-2212.

{¶3} On November 7, 2012, the Ohio Innocence Project filed a motion to release biological samples in the case. The Innocence Project sought new copies of the tissue slides in order to evaluate appellant's case for any possible postconviction proceedings. By judgment entry filed December 12, 2012, the trial court denied the motion.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶5} "THE TRIAL COURT ERRED WHEN IT CREATED A CIRCULAR AND SELF-DEFEATING LEGAL STANDARD FOR OBTAINING TISSUE SLIDES FROM AN AUTOPSY SUCH THAT NO APPLICATION FOR TISSUE SLIDES FROM AN AUTOPSY WOULD EVER BE GRANTED IN VIOLATION OF BOTH THE U.S. AND OHIO CONSTITUTIONS."

II

{¶6} "THE TRIAL COURT ERRED IN FAILING TO RELEASE RE-CUTS OF THE TISSUE SLIDES TO DEFENDANT'S FOUR LISTED EXPERTS AS REQUIRED BY BOTH OHIO LAW AND THE U.S. AND OHIO CONSTITUTIONS."

III

{¶7} "THE TRIAL COURT ERRED WHEN IT ANALYZED DEFENDANT'S REQUEST FOR TISSUE SLIDES AS BEING BASED SOLELY ON ADVANCEMENTS IN S.I.D.S."

IV

{¶8} "THE TRIAL COURT ERRED IN EVALUATING BIGGS'S MOTION FOR RELEASE AS A MOTION FOR POST-CONVICTION RELIEF."

I, II

{¶9} Appellant claims the trial court erred in denying his motion to release biological samples in his case as the trial court's decision created a circular and self-defeating standard, the samples had previously been provided to his trial counsel but were lost by his expert, due process requires such release, and in the absence of a statute, the trial court had the discretion to release the tissue slides. We disagree.

{¶10} The Ohio Innocence Project filed the motion to release biological samples on behalf of appellant in order to determine if any postconviction proceedings were warranted. The Innocence Project requested tissue slides from the autopsy performed on the infant victim because three experts it contacted to conduct a review needed to examine the original slides. Each expert opined that in order to review the case "a new," they must examine the tissue slides. See, Exhibits A, B, and C, attached to the Motion to Release Biological Samples filed November 7, 2012.

{¶11} Preliminarily, it is necessary to point out that time has long since passed for appellant to file an application for postconviction relief or a motion for new trial in the ordinary course of criminal procedure. There is no motion for postconviction relief currently pending or contemplated by the Innocence Project at this time. There is no specific statutory right or privilege invoked by appellant's motion or any indication of a specific criminal rule or procedure that is applicable to this case. The jurisdiction of the trial court appears not to have been invoked by specific statute or rule.

{¶12} This matter presents an issue of first impression to this court. We conclude that given the issue of the trial court's jurisdiction and the lack of any statutory authority relative to this request, our standard of review of the trial court's decision is de novo "as a matter of law."

{¶13} Because of the lack of statutory authority or specific rule, we are forced by analogy to review this motion by the standards set forth in R.C. 2953.73, 2953.74, and 2953.75 relative to DNA evidence.

{¶14} In *State v. Prade,* 126 Ohio St.3d 27, 2010-Ohio-1842, the Supreme Court of Ohio set forth a two-stage analysis for postconviction relief under R.C. 2953.74.

Former Justice Stratton found in a DNA testing application pursuant to R.C. 2953.73, the movant must first prove "new DNA testing methods are now able to provide new information that was not able to be detected at the time of defendant's trial." *Prade* at ¶ 23. In addition, the movant must show that the new testing would have been outcome-determinative at the original trial (¶ 25):

R.C. 2953.71 provides that "outcome determinative" means that "had the results of DNA testing of the subject inmate been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, *there is a strong probability that no reasonable factfinder would have found the inmate guilty of that offense * * *.*"  (Emphasis added.)  R.C. 2953.71(L).

{¶15} We will analyze appellant's request in this case under this two-stage standard.  First, is the testing asked of the experts an innovative, advanced or new scientific test or form of analysis unavailable at the time of appellant's trial?

{¶16}  The three experts contacted by the Innocence Project, George R. Nichols, II, M.D., Marvin Miller, M.D., and Mark J. Shuman, M.D., M.S., all explained they needed to exam the tissue slides in order to evaluate the case, but did not even infer that the science now available was new, innovative or more advanced than the science utilized by appellant's expert at trial, Werner Spitz, M.D.  See, Exhibits A, B, and C, attached to the Motion to Release Biological Samples filed November 7, 2012.  In fact, in an e-mail dated February 3, 2012, Dr. Shuman already concluded without the slides that his opinion differs from the opinions of the state's expert witnesses at trial, P.S.S. Murthy, M.D. and Anthony Bertin, D.O.  See, Exhibit D, attached to the Motion to Release Biological Samples filed November 7, 2012.

{¶17} Appellant argues Dr. Shuman would be the first pediatric forensic specialist to offer an opinion in the case as none of the state's experts or appellant's own expert were pediatric forensic specialists.  With all due respect to the better choice of expert, this argument has long gone "left the station" as a viable reason for appellant's motion.

{¶18}  Appellant also offers that "advancements" have been made in the study of infant deaths since the time of appellant's trial.  Appellant supported this statement in his motion at footnote no. 4 as follows:

> For example, child medical specialists now have a greater understanding about accidental asphyxiation resulting from unsafe sleeping conditions, these deaths having commonly been labeled as sudden infant death syndrome ("SIDS").  See State v. Hansen, 2008 Minn.

App. Unpub. LEXIS 292 (Minn. App. 2008), *review denied* <u>State v. Hansen</u>, 2008 Minn. LEXIS 329 (2008), *motion for new trial granted* "Findings of Fact, Conclusions of Law and Order," No. 23-KX-04-1222, District Court of Douglas County (July 13, 2011) (attached as Defendant's Exhibit F).  In *Hansen,* the defendant was convicted of second-degree murder for the death of his infant daughter.  The autopsy revealed evidence of a skull fracture, which was presumed to have been caused by intentional blunt force trauma.  Subsequent review by medical experts revealed that the skull trauma had been caused by the infant's car carrier falling onto the ground with the infant inside, and that this trauma was not fatal.  Instead, the experts believe that the infant had died as the result of "positional asphyxiation," i.e., accidental asphyxiation due to unsafe sleep conditions, as she had been sleeping face-down on a futon with her father, surrounded by loose pillows.  Unexplained infant deaths are often classified as sudden infant death syndrome ("SIDS"), but advancements in knowledge about SIDS and positional asphyxia led the district court to grant the defendant's motion for new trial on the basis of this newly-discovered scientific evidence.  <u>See</u>, <u>id.</u>

{¶19}  We find this reference does not rise to the level of new advancements in the determination of infant deaths as the *Hansen* case was fact specific.

{¶20}  Based upon our review, we find no evidentiary quality averments necessary to fulfill the first prong of *Prade.*  There is no evidence of any new definitive

tests. We therefore conclude appellant has failed to meet his burden required for the resubmission of the tissue slides to his "newly discovered" experts.

{¶21} By inference, appellant argues he was afforded the tissue slides in initial discovery and therefore what harm is there in permitting him to have them again. Presumably, if Dr. Spitz had not lost/destroyed the slides, appellant's new experts could render their reports without judicial intervention. Basically, the argument is "no harm, no foul."

{¶22} To this position, we find Justice O'Donnell comments in his dissent in *Prade* at ¶ 41-43 to be on point:

> This construction of the statute is supported by the narrow remedy afforded inmates in seeking postconviction relief. As this court explained in *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, postconviction review is not a constitutional right, and it provides only "a narrow remedy." Because of the significant societal interest in the finality of judgments, the postconviction-relief statute provides only a limited opportunity to collaterally attack a conviction, an opportunity not intended to allow inmates to relitigate issues previously resolved at trial. See id. (explaining that res judicata applies to actions for postconviction relief); *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 47 (noting that courts construe statutes establishing postconviction relief narrowly to uphold the societal interest in final judgments). As we stated in *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 671 N.E.2d 233: " ' "[P]ublic

policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." ' "  Id. at 95, 671 N.E.2d 233, quoting *Federated Dept. Stores, Inc. v. Moitie* (1981), 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103, quoting *Baldwin v. Iowa State Traveling Men's Assn.* (1931), 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244.

This court should treat an inmate's postconviction application for DNA testing no differently.  Notably, in *District Attorney's Office for Third Judicial Dist. v. Osborne* (2009), —— U.S. ——, ——, 129 S.Ct. 2308, 2323, 174 L.Ed.2d 38, the Supreme Court of the United States declined to recognize a freestanding constitutional right to postconviction DNA testing. The court explained that any due process right of access to DNA evidence "must be analyzed in light of the fact that [the inmate] has already been found guilty at a fair trial, and has only a limited interest in postconviction relief," id. at 2320, and it recognized that resolving the dilemma of "how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice" is a "task [that] belongs primarily to the legislature," id. at 2316.

In enacting R.C. 2953.71 et seq., the General Assembly took up this task, considered the public-policy questions raised by postconviction DNA testing, measured an inmate's interest in proving actual innocence against the societal interest in the finality of judgments, and established a

limited remedy affording postconviction DNA testing in cases where biological evidence has not been the subject of a prior definitive test. This court should not expand that remedy beyond the statute's express terms. The legislature could have provided for courts to consider advances in testing technology in determining whether prior tests were definitive, yet it chose not to do so. Instead, by barring applications for retesting when there has been a prior *definitive* test, the legislature signaled its intent to uphold the finality of convictions.

{¶23} Upon review, we find the trial court did not err in denying appellant's motion to release biological samples.

{¶24} Assignments of Error I and II are denied.

### III, IV

{¶25} Appellant claims the trial court erred in determining his request was based solely on advancements in diagnosing S.I.D.S., and erred in evaluating the motion as a motion for postconviction relief. We disagree.

{¶26} Because we are addressing the issues herein de novo as a matter of law, we find it is unnecessary to address these assignments as, noted above, it is hard to determine what jurisdictional avenue is open to appellant, if any. Further, appellant's motion contains a statement which was not supported by any affidavit or quality evidence that there have been advancements in the study of infant deaths, including the diagnosis of S.I.D.S., since appellant's trial. See, Appellant's Motion to Release Biological Samples filed November 7, 2012 at page 3.

{¶27}  Assignments of Error III and IV are denied.

{¶28}  The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Delaney, J. concur.


_____
Hon. Sheila G. Farmer


_____
Hon. William B. Hoffman


_____
Hon. Patricia A. Delaney


SGF/sg 0709

[Cite as *State v. Biggs*, 2013-Ohio-3333.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | |
| -vs- | : | JUDGMENT ENTRY |
| JAY LEWIS BIGGS | : | |
| Defendant-Appellant | : | CASE NO. 2013CA00009 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. William B. Hoffman

_____
Hon. Patricia A. Delaney