[Cite as *State v. Fox*, 2020-Ohio-5521.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-677 |
| v. | : | (C.P.C. No. 15CR-5585) |
| Lewis R. Fox, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 3, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Daniel J. Stanley*, for appellee.

**On brief:** *Lewis R. Fox*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Lewis R. Fox, appeals the September 5, 2019 decision of the Franklin County Court of Common Pleas denying his timely petition for postconviction relief without a hearing.

{¶ 2} Fox was indicted on November 13, 2015, with two counts of felonious assault in violation of R.C. 2903.11, each with three-year firearm specifications. Following a jury trial in January 2017, Fox was found guilty on all counts and sentenced to a total term of ten years incarceration. This court affirmed his conviction and the Supreme Court of Ohio did not accept jurisdiction over his case. *See State v. Fox*, 10th Dist. 17AP-295, 2018-Ohio-501, *discretionary appeal not allowed*, 152 Ohio St.3d 1484, 2018-Ohio-1990.

No. 19AP-677

{¶ 3} In its opinion affirming his conviction on direct appeal, this court summarized the evidence presented at Fox's trial:

> Mary Griffin testified as follows. During the evening of October 29, 2015, Mary Griffin and her grandmother, Mary Robinson, drove to Elaine Robinson's residence. When they arrived, Elaine opened the door and they all talked, with Mary Griffin and Mary Robinson standing just outside the front door. At some point, Fox came down from the upstairs of the residence, and "some words were exchanged" between Mary Griffin and Fox. Fox called Mary Griffin and Mary Robinson "bitch[es]," and said if they "didn't move off his porch that he was going to shoot" them. Fox was only a few feet away from Mary Griffin as they verbally confronted each other. Mary Griffin heard two or three gunshots and then realized she had been shot in her upper thigh. Mary Griffin did not see the firearm in Fox's hand prior to hearing the gunshots, but she observed Fox raise his arm when the shots were fired. Fox had pointed the gun at Mary Griffin's leg. Mary Griffin denied lunging at or touching Fox before the shooting. Mary Robinson was standing close behind Mary Griffin at the time of the shooting.

> Mary Robinson testified as follows. On the day of the shooting, she and Mary Griffin intended to pick up Elaine Robinson from her home because she was having problems with her boyfriend, Fox. After they arrived at Elaine's residence, Elaine told them that Fox would not let her go with them. Elaine called for Fox, and when he descended the stairs he was angry and possibly drunk. Fox said, "I'm sick of you bitches." Mary Robinson saw Fox's right "hand coming up," and then she heard one or two gunshots. Fox was pointing the weapon at Mary Griffin. Prior to the weapon being discharged, Mary Robinson did not see Mary Griffin touch Fox in any manner, but they were in close proximity to each other. Mary Robinson was within arm's reach of Mary Griffin when Fox fired the shots. Fox "didn't make any threats * * * He just shot [Mary Griffin]." No bullet struck Mary Robinson.

> Elaine Robinson, who was called as a witness on Fox's behalf, testified as follows. Fox and Elaine were living together on the day of the shooting. On that day, Mary Griffin and Mary Robinson arrived at Elaine and Fox's residence upset because of statements Fox had made regarding Mary Robinson. Elaine called for Fox and told him that "Mary and them are at the door." Fox came down the stairs and to the front door. Elaine

No. 19AP-677

did not see Fox carrying a weapon until she heard two gunshots. Fox did not point the weapon at anyone. When Fox fired the weapon, he was falling backward in response to Mary Griffin moving her hands toward Fox. Elaine characterized the shooting as being an accidental consequence of Fox stumbling backward. Elaine also testified that she told the police after the shooting that Fox shot downward at the porch to scare away Mary Griffin and Mary Robinson.

Fox testified on his own behalf. At approximately 8:00 p.m. on the day of the shooting, Fox was upstairs at his residence when he heard loud voices downstairs. Fox heard someone screaming in anger and then heard Elaine call for him in a distressed manner. Because he was concerned that there was an intruder in the house, he grabbed a gun from his bedroom closet and brought it with him down the stairs. Holding the gun hidden behind his leg with his finger on the trigger, Fox stood in the doorway to the home and told Mary Griffin and Mary Robinson that they needed to leave. Mary Griffin then "lunged" at him like she was going to grab him. Fox testified that he accidentally shot the firearm twice. Fox "stumbled back * * * and the firearm just discharged." He "even [saw] the [* * * 5] fire shoot out twice, shot twice." He did not either raise the gun or shoot at the ground on purpose. After the weapon fired twice, Fox dropped it on a chair inside the house. When asked how the firearm discharged, Fox explained, "I guess I squeezed the trigger or something. You know how you're - - an excited moment. I mean, it surprised me."

After the shooting, and based on information Fox provided, police recovered a five-shot revolver in the kitchen of Elaine and Fox's residence. Two of the rounds were spent, and the other three were unfired. Columbus Division of Police Detective Steven Miller, who interviewed Fox on the night of the shooting, testified that the gun recovered from the scene of the shooting was a "double-action" firearm. For this type of firearm, the hammer must be pulled back with a squeeze or pull of the trigger in order to fire each bullet. The parties stipulated that Mary Griffin sustained an injury consistent with a single gunshot that entered her right thigh and exited her right buttock at a down to up trajectory.

*Id.* at ¶ 3-8.

{¶ 4} While his direct appeal was pending in this court, Fox filed a pro se postconviction petition arguing that his trial counsel was ineffective, based on (1) trial

counsel's alleged failure to advise Fox to accept a proffered plea agreement, (2) trial counsel's alleged failure to investigate the scene of the crime for additional bullet-trajectory evidence, (3) trial counsel's alleged failure to properly prepare Elaine Robinson to testify, (4) trial counsel's alleged failure to investigate Fox's claim of disability in his hand and arm, (5) trial counsel's alleged failure to call the doctors who examined his hand and arm and who examined and treated Mary Griffin's injuries as witnesses, (6) trial counsel's alleged failure to call a private investigator as a witness, (7) trial counsel's alleged failure to call a ballistics expert as a witness, (8) trial counsel's alleged failure to call a "gun expert" as a witness, (9) trial counsel's alleged failure to present evidence of the lesser-included offense of reckless assault, (10) trial counsel's alleged failure to play additional recorded witness interviews at trial, and (11) trial counsel's alleged failure to preserve Fox's right to a speedy trial. Fox did not attach any evidence or affidavits to his petition, but alongside his petition he filed a motion for appointment of counsel, as well as a motion for expert assistance, and attached to his motion for expert assistance he included a copy of a police report, letters he received from his trial counsel and appellate counsel, a copy of a photograph of himself and Elaine Robinson, and three hand-drawn maps of the scene of the shooting and surrounding areas. He did not, however, submit any witness affidavits or proposed experts or attach any expert reports but, instead, repeatedly asserted in both his petition and his motions that evidence to support his postconviction claims "is not attached because petitioner needs the assistance of an attorney, investigator, and/or assistance of this Honorable Court to produce the evidence."

{¶ 5} The state filed a timely answer and motion to dismiss Fox's postconviction petition, but the trial court held its decision on the petition in abeyance until this court and

No. 19AP-677

the Supreme Court of Ohio determined the merits of Fox's direct appeal. On September 5,

2019, the trial court denied Fox's petition without a hearing:

> Upon careful review of defendant's petition and the record in this matter, the Court finds defendant's petition lacks evidence that a constitutional error occurred that would support the Court's finding that defendant's conviction was void or voidable. The correspondence from defendant's trial counsel and appellate counsel do not advance defendant's claims of ineffective assistance. To the contrary, trial counsel's letter actually refutes defendant's position. The other evidence submitted by defendant; namely, the police report and drawings of the crime scene, likewise, do not support defendant's position of ineffective assistance of counsel or other constitutional error. Finally, the record is replete with speedy-trial waivers containing defendant's signature. Without evidence containing sufficient operative facts that demonstrate defendant's constitutional rights were violated, the Court finds defendant's motion is without merit.

Decision and Entry at 5. Fox has appealed to this court, and now asserts three assignments

of error with the trial court's decision:

> [I.] The trial court abused its discretion when it dismissed appellant's post-conviction [sic] petition based upon: A) "The court [found] defendant's petition lacks evidence that a constitutional error occurred;" [sic] and, (2) "[D]efendant's petition [was] barred by the application of res judicata."

> [II.] The trial court abused its discretion when it failed to hold an evidentiary hearing on appellant's post conviction [sic] petition.

> [III.] Appellant's conviction and sentence is voidable because appellant was denied the effective assistance of trial counsel in violation of his rights under the Sixth Amendment of the United States Constitution.

{¶ 6} R.C. 2953.21(A)(1)(a) authorizes a person who has been convicted of a

criminal offense "who claims that there was such a denial or infringement of the person's

rights as to render the judgment void or voidable under the Ohio Constitution or the

Constitution of the United States * * * [to] file a petition in the court that imposed sentence,

stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." "[A] petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment." *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, at ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). Postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record.' " *Id.*, quoting *State v. Murphy*, 10th Dist. No. 00AP-233, 2000 Ohio App. LEXIS 6129 (Dec. 26, 2000).

{¶ 7} A petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *Sidibeh* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980). To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence demonstrating a cognizable claim of constitutional error. *Id.*, citing R.C. 2953.21(C); *Hessler* at ¶ 24. Prior to granting a hearing on a petition for postconviction relief, the trial court must determine if substantive grounds for relief exist—specifically, whether the petition sets forth enough facts to support a claim of a constitutional issue. *State v. Kapper*, 5 Ohio St.3d 36 (1983). The trial court may deny a postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶ 8} Fox's petition asserts the general claim that his counsel was constitutionally ineffective. "To prevail on his claim, appellant must demonstrate: (1) defense counsel's performance was so deficient he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's

errors prejudiced defendant, depriving her of a trial whose result is reliable." *State v. Clinkscale*, 10th Dist. No. 11AP-980, 2012-Ohio-2868, ¶ 22, citing, *e.g., Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner "bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 283 (1999). A defendant claiming ineffective assistance of counsel must identify specific acts or omissions of counsel that are alleged not to be within the realm of reasonable professional judgment. *Strickland* at 690. And "[t]here is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy." *State v. Nichols*, 116 Ohio App.3d 759, 764 (1996). In order for a claim of ineffective assistance to be successful, the court must find that the challenged acts or omissions were "outside the wide range of professionally competent assistance," *Strickland* at 690, and also that defendant was prejudiced thereby.

{¶ 9} Finally, the doctrine of res judicata places a significant restriction on the availability of postconviction relief, since it bars a convicted defendant from presenting " 'any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.' " *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. We have also observed that res judicata "implicitly bars a petitioner from 're-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 27.

{¶ 10} Appellate courts are extremely deferential to trial court decisions regarding postconviction relief. A reviewing court will not overrule the trial court's finding on a

No. 19AP-677

petition for postconviction relief if the decision is supported by "competent and credible evidence." *Sidibeh* at ¶ 7, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. And appellate courts should not overturn a trial court's denial of postconviction relief unless an abuse of discretion has occurred. *Gondor* at ¶ 60. An abuse of discretion occurs when a trial court's determination is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} In sum, prior to dismissing Fox's petition without a hearing, the trial court was required to determine that the evidentiary materials submitted with the petition for postconviction relief did not provide or allege sufficient operative facts to indicate that Fox's trial counsel was deficient and that Fox was prejudiced by this deficiency. *See, e.g., State v. Mengistu*, 10th Dist. 03AP-1202, 2004-Ohio-3596, ¶ 14. And if the trial court did not abuse its discretion in making this determination, its judgment should be affirmed.

{¶ 12} We also have little difficulty reaching the conclusion that the trial court's decision to dismiss the petition was within its discretion. The trial court's decision evaluated the record, as well as Fox's petition and evidentiary materials, and concluded that there were insufficient facts presented to support his claims. We have similarly reviewed the record and postconviction evidence submitted, and observe: (1) that Fox rejected the proffered plea agreement on the record following a detailed back-and-forth discussion with the trial court, *see* Decision at 2-3; (2) that Fox's petition contained no evidence other than bare allegations to support its claims that trial counsel had failed to adequately investigate the crime scene; (3) that defendant and the state had entered into a stipulation at trial regarding the trajectory of the bullet; (4) that there was no clear basis to suggest that counsel's witness preparation of Elaine Robinson was inadequate; (5) that Fox's testimony was sufficient to establish his claims of injury and to support his claim of accidental weapon

No. 19AP-677

discharge; (6) that there is no evidence to suggest that Fox was prejudiced by the decision to forego calling Mary Griffin's doctor as a witness since the bullet's trajectory through her right thigh and buttock is undisputed; (7) that Fox wholly failed to show how he was prejudiced by trial counsel's alleged failure to hire a private investigator; (8) that Fox failed to demonstrate how a ballistics expert would have benefited his defense; (9) that Fox's own testimony rendered any "gun expert" unnecessary; (10) that a jury instruction for misdemeanor reckless assault would have been inconsistent with Fox's own testimony and accident defense; (11) that counsel's decisions regarding the presentation of evidence were within the realm of a sound trial strategy; and (12) that Fox consented to and approved each continuance entry and waiver of his right to speedy trial on the record.

{¶ 13} In short, we believe that the trial court correctly evaluated the evidentiary materials with which it had been provided. When viewed in light of the evidence presented at trial, we cannot say that the trial court abused its discretion in determining that Fox failed to present "evidence containing sufficient operative facts that demonstrate [Fox's] constitutional rights were violated," Decision at 5, and disposing of his petition without a hearing. For all these reasons, Fox's three assignments of error are overruled, and the judgment of the trial court dismissing his postconviction petition is affirmed.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

––––––––––––––