[Cite as *State v. Jackson*, 2021-Ohio-3115.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29001 |
| | : | |
| v. | : | Trial Court Case No. 2010-CR-1126 |
| | : | |
| DENNIS DEVONE JACKSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of September, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

DENNIS DEVONE JACKSON, #A645-759, Southeastern Correctional Institution, 5900 B.I.S. Road, Lancaster, Ohio 43130
 Defendant-Appellant, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Dennis Devone Jackson appeals from orders of the Montgomery County Court of Common Pleas, which denied his Motion to Correct an Illegal/Void Sentence and his Motion for New Trial/Motion to Dismiss. Jackson filed timely notices of appeal on January 5, 2021.

{¶ 2} We set forth the history of the case in *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335 ( "*Jackson I*") and repeat it herein in pertinent part:

On the night of March 19, 2010, someone entered Unit 4716 in the Deer Creek apartment complex, shot Antoine West, and robbed him. Two other people who were in the apartment at the time, Thomas Horn and Kimberly Carl, were unharmed. Carl was unable to identify the shooter, and Horn later gave conflicting statements about whether he could identify the shooter.

An investigation by the Trotwood Police Department led the detectives to believe that Jackson had been the assailant, that Jackson shot West with a gun Jackson had borrowed from an acquaintance, Dion Sims, and that Jackson had taken a large sum of money from West.

Jackson was indicted on the following offenses: murder (as a proximate result of aggravated burglary); aggravated burglary (deadly weapon); murder (as a proximate result of aggravated robbery); aggravated robbery (deadly weapon); murder (as a proximate result of a felonious assault); felonious assault (deadly weapon); felonious assault (serious harm); aggravated burglary (physical harm); and aggravated robbery

(serious harm). The indictment also contained a firearm specification on each count.

Before trial, Jackson filed a motion to suppress photo identification evidence and statements he made to the police during the investigation. After a hearing, his motion to suppress was overruled.

The case was set for trial on August 30, 2010. On that date, however, the State informed the court that it had been unable to locate Horn, who was a key witness. The State requested a continuance and asked the court to issue a material witness warrant for Horn. The trial court granted the State's request for a continuance, issued a material witness warrant for Horn, and reset the trial for three weeks later.

The first trial began on September 20, 2010. At that time, the State still had not located Horn. Jackson requested a mistrial, however, when one of the State's witnesses, Dion Sims—who, in Jackson's estimation, was an alternate suspect—revealed during his testimony that he had taken a lie detector test. Jackson's motion for a mistrial was granted.

Thereafter, Jackson argued to the court that his right not to be placed in double jeopardy and his right to a speedy trial had been violated, and he asked that the charges against him be dismissed. The trial court overruled the motion to dismiss, and a second trial was scheduled for December 2010. Meanwhile, Thomas Horn was located in October 2010 and was arrested pursuant to the material witness warrant. Horn's deposition was taken, in accordance with Crim.R. 15, before he was released from custody;

he was also served with a subpoena for trial before he was released.

Jackson's second trial was held on December 3 and December 6-10, 2010. Horn did not appear at trial and could not be located by the police. The trial court declared Horn unavailable, and his deposition was played for the jury. In his deposition testimony, Horn claimed not to recall the identity of the shooter, but he admitted and was cross-examined by the State about prior statements in which he identified Jackson as the shooter.

The State also presented evidence at trial that Sims had loaned a gun to Jackson on the day of the shooting and that forensic evidence linked that gun to the shooting. The State offered testimony from a neighbor of the victim that a man running from the building after the shooting had worn a multi-colored jacket, testimony and surveillance video showing that Jackson had worn a similar jacket earlier in the day, and testimony that the victim had been in possession of a large sum of cash at the time of the shooting. No cash was found on the victim's body, and his pants' pockets had been turned inside out. The State also offered evidence to discredit Jackson's statements to the police about where he had been at the time of the shooting, including cell phone records and testimony from the people with whom he claimed to have been.

The defense did not call any witnesses.

The jury found Jackson guilty on all counts.

The trial court merged the counts of murder and felonious assault into one count of murder, and sentenced Jackson to fifteen years to life for

that offense. The trial court also merged the two counts of aggravated burglary and the two counts of aggravated robbery; the court sentenced Jackson to ten years for aggravated burglary and ten years for aggravated robbery, to be served concurrently to one another, but consecutively to the sentence for murder. All of the firearm specifications were also merged, and Jackson was sentenced to three additional years of actual incarceration on the firearm specification.

*Id.* at ¶ 2-13. Jackson's aggregate sentence was 28 years to life in prison. *Id.* at ¶ 1. Jackson appealed his convictions, and we affirmed the judgment of the trial court in *Jackson I. Id.* at ¶ 143.

{¶ 3} Several years later, Jackson filed a motion for new trial, a motion to dismiss, and a supplemental motion to dismiss in December 2017 and January 2018. Later still, on April 16, 2020, Jackson filed a motion to correct an illegal/void sentence, which he also later sought to supplement in May 2020. On December 11, 2020, the trial court filed two separate entries in which it overruled Jackson's motion to correct an illegal/void sentence and his motion for new trial/motion to dismiss. In both entries, the trial court construed Jackson's motions as petitions for postconviction relief, and it denied the petitions as untimely and barred by res judicata.

{¶ 4} As previously stated, Jackson filed a timely notice of appeal of the trial court's orders. Jackson filed his merit brief on February 19, 2021, and the State filed its responsive brief on April 30, 2021. On May 10, 2021, Jackson filed a motion requesting leave to supplement his brief with an additional assignment of error contained in the motion. On June 9, 2021, we granted Jackson's motion to supplement his original brief,

and the State filed its response to Jackson's additional assignment of error the following day. On June 24, 2021, Jackson filed a reply to the State's response to his motion requesting leave to supplement his brief with an additional assignment of error.

{¶ 5} Jackson's appeals, pro se. Because they are interrelated, we will discuss all six of Jackson's assignments of error together as follows:

DID JUDGE PARKER ERR, AND ABUSE HIS DISCRETION WHEN HE FOUND APPELLANT'S MOTION TO CORRECT ILLEGAL/VOID SENTENCE WAS BARRED BY RES JUDICATA?

WAS JUDGE PARKER IN ERR [sic] WHEN HE FOUND THE LANGUAGE IN R.C. 2929.14(B)(1)(G) DID NOT APPLY AT THE TIME OF APPELLANT'S SENTENCING HOLDING JUDGE TUCKER THEREFORE DID NOT ACT WITHOUT AUTHORITY, OR CONTRARY TO LAW WHEN HE APPLIED R.C. 2929.14(D)(1)(B)?

WAS JUDGE PARKER IN ERR [sic] WHEN HE FOUND THAT TO LENGTHEN APPELLANT'S SENTENCE AN ADDITIONAL 3 YRS. (FIREARM SPECIFICATION) WOULD VIOLATE THE EX POST FACTO CLAUSE?

JUDGE PARKER ABUSED HIS AUTHORITY WHEN HE ALLEGED APPELLANT MADE CONSTITUTIONAL DUE PROCESS CLAIM IN HIS MOTION FOR LEAVE TO SUPPLEMENT MOTION TO CORRECT ILLEGAL / VOID SENTENCE? [sic]

DID TRIAL COUNSEL'S FAILURE TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL AT EVERY STAGE OF TRIAL

PROCEEDINGS PREVENT AN EFFECTIVE RECORD DURING APPELLANT'S DIRECT APPEAL FROM CONVICTION ALLOWING HIS SPEEDY TRIAL RIGHTS PURSUANT [TO] O.R.C. 2945.71-73 FROM BEING FAIRLY ADDRESSED?

DID THE TRIAL COURT ERR WHEN IT HELD TRIAL JUDGE / COURT'S UNAUTHORIZE [sic] [AND] UNLAWFUL ACTS OF IMPOSING SENTENCE OUTSIDE OF OHIO'S STATUTORY MANDATES WERE VOIDABLE, AND NOT VOID, AND WERE REQUIRED TO BE CHALLENGE[D] ON DIRECT APPEAL?

{¶ 6} In his first, second, third, and sixth assignments of error, Jackson contends that the trial court erred when it merged a three-year sentence for a firearm specification into his aggregate sentence of 28 years to life in prison rather than sentencing him to an additional three years in prison. In his fourth and fifth assignments of error, Jackson argues that his speedy trial rights were violated and that he received ineffective assistance of counsel when his attorney failed to raise the issue prior to his second trial in 2010.

{¶ 7} Postconviction relief is governed by R.C. 2953.21. The statute provides, in pertinent part, that:

Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the

court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

{¶ 8} "A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Stefen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *see also State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48. To prevail on a petition for postconviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 9} The postconviction relief statutes do "not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in addressing a petition for postconviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing. *Gondor* at ¶ 51. A trial court may dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus; *Gondor* at ¶ 51.

{¶ 10} We review the trial court's denial of a petition for postconviction relief for an abuse of discretion. *Gondor* at ¶ 52. An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 11} Initially, we agree with the trial court that Jackson's motions were the functional equivalent of petitions for postconviction relief, which were untimely because they were not filed within 365 days after the trial transcript was filed with this court in his direct appeal. *See* R.C. 2953.21(A)(2). Additionally, none of the statutory exceptions for filing untimely petitions applied here. *See* R.C. 2953.23(A).

{¶ 12} The arguments raised in Jackson's motions established, at most, that his sentence was voidable. Jackson did not argue that his sentence was not in conformity with statutorily mandated terms, that it was not provided for by law, or even that it failed to comply with the formal requirements of R.C. 2941.25. *See State v. Parson*, 2d Dist. Montgomery No. 24641, 2012-Ohio-730, ¶ 9. At best, Jackson's sentence was voidable; thus he was barred by the doctrine of res judicata from challenging his sentence on these grounds collaterally through his petition for postconviction relief, as he could have raised the issue regarding the trial court's failure to sentence him to an additional consecutive three-year prison term for the second firearm specification in his direct appeal. *See State v. Videen*, 2d Dist. Montgomery No. 27479, 2017-Ohio-8608, ¶ 20, citing *State v. Russell*, 10th Dist. Franklin No. 04AP-1149, 2005-Ohio-4063, ¶ 6-7 (finding res judicata barred appellant from raising issues in his motion for new trial that could have been raised in his direct appeal).

{¶ 13} In *State v. Reid*, 2d Dist. Montgomery No. 25790, 2014-Ohio-1282, we stated the following:

> "Pursuant to the doctrine of res judicata, a valid final judgment on the
> merits bars all subsequent actions based on any claim arising out of the

transaction or occurrence that was the subject matter of the previous action." *State v. Collins*, 2d Dist. Montgomery No. 25612, 2013-Ohio-3645, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). Moreover, "[a]rguments challenging the imposition of a sentence that is voidable are barred by the doctrine of res judicata if not raised on direct appeal." *State v. Simons*, 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 42, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 30. (Other citation omitted.) In other words, "defendants with a voidable sentence are entitled to re-sentencing only upon a successful challenge on direct appeal." *Id.* at ¶ 40, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 30.

"[A] voidable judgment is one rendered by a court that has both jurisdiction and authority to act, but the court's judgment is invalid, irregular, or erroneous." *Id.*, quoting *Simpkins* at ¶ 12.

*Reid* at ¶ 7-8.

{¶ 14} Furthermore, Jackson's argument with respect to the trial court's failure to sentence him to an additional consecutive three-year prison term for the second firearm specification is without merit because the error, if any, was harmless. Ordinarily, the court is forbidden from imposing sentence on multiple firearm specifications for "felonies committed as part of the same act or transaction." *See* former R.C. 2929.14(D)(1)(b), now R.C. 2929.14(B)(1)(b). However, that section applies only to the extent that former R.C. 2929.14(D)(1)(g) (now R.C. 2929.14(B)(1)(g)) does not apply. Former R.C. 2929.14(D)(1)(g) stated:

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty *and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.*

(Emphasis added.)

{¶ 15} Here, the trial court's failure to impose an additional three-year consecutive prison term for the second firearm specification benefitted Jackson, because he will ostensibly serve fewer years in prison. Accordingly, none of Jackson's substantial rights were violated, and he suffered no prejudice.

{¶ 16} Finally, Jackson's arguments in regard to a violation of his speedy trial rights and his counsel's failure to raise the issue in the trial court were barred by res judicata. Initially, we note that we found in *Jackson I* that Jackson's speedy trial rights had not been violated when the trial court denied his motion to dismiss on speedy trial grounds. Thus, any issue with respect to Jackson's speedy trial rights has already been litigated, and we need not address it here. Additionally, "[a]ny ineffective assistance claim relating to matters contained within the record should be brought through a direct appeal." *State v.*

*Lane*, 2d Dist. Greene No. 2014-CA-54, 2015-Ohio-2712, ¶ 13, citing *State v. Wilson*, 2d Dist. Montgomery No. 23129, 2013-Ohio-180, ¶ 47-48. " 'If an alleged constitutional error [such as ineffective assistance of counsel] could have been raised and fully litigated on direct appeal, the issue is res judicata and may not be litigated in a postconviction proceeding.' " *Id.*, quoting *State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, ¶ 9, citing *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967).

{¶ 17} In light of the foregoing, Jackson's six assignments of error are overruled.

{¶ 18} The judgments of the trial court are affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Dennis D. Jackson
Hon. Gerald Parker