OPINION
{¶ 1} Defendant-appellant, Robert M. Brandy ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, which denied his petition for post-conviction relief without an evidentiary hearing. For the following reasons, we affirm.
 {¶ 2} On July 1, 2002, appellant was found guilty of aggravated murder, possession of cocaine, and having a weapon under disability. The murder and drug *Page 2 
charges were tried before a jury. Appellant appealed the court's judgment, and this court affirmed. State v. Brandy, Franklin App. No. 02AP-832, 2003-Ohio-1836.
 {¶ 3} On June 23, 2006, appellant filed a petition for post-conviction relief. In his petition, appellant asserted that he had "recently received newly discovered evidence that clearly shows how his conviction was the result of ineffective assistance of trial counsel for counsel[']s failure to call a material eyewitness to the crime" for which he was convicted. The "material eyewitness" to whom appellant referred was his mother, who was convicted of manslaughter arising out of the same crime for which appellant was convicted.
 {¶ 4} On August 10, 2006, the trial court denied appellant's petition without a hearing. The court concluded that appellant's petition was untimely and that appellant had not shown that he was unavoidably prevented from discovering the evidence he was presenting. The court also rejected appellant's claim of ineffective assistance of counsel and noted that appellant should have raised the issue in his initial appeal.
 {¶ 5} Appellant filed a timely appeal, and he raises the following assignments of error:
 [I.] THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT[']S FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION BY DISMISSING APPELLANT[']S POST-CONVICTION PETITION PURSUANT TO O.R.C. 2953.23(A)(1)(a) AFTER APPELLANT SHOWED A PRIMA FACIE SHOWING OF HOW HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING FACTS UPON WHICH HIS PETITION WAS BASED UPON.
 [II] THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO HOLD [AN] ENVIDENTIARY HEARING AFTER APPELLANT MADE A PRIMA FACIE SHOWING OF *Page 3 
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO NEWLY DISCOVERED EVIDENCE PURSUANT TO O.R.C. 2953.23(A)(1)(a) AND (b) IN VIOLATION OF THE APPELLANT[']S FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I
SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 6} Appellant's right to post-conviction relief arises from R.C.2953.21(A)(1), which provides:
 Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 7} The post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. State v.Steffen (1994), 70 Ohio St.3d 399, 410. It is a means to reach constitutional issues that would otherwise be impossible to reach because the trial court record does not contain evidence supporting those issues. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Appellant does not have a constitutional right of post-conviction review. Rather, post-conviction relief is a narrow remedy that affords appellant no rights beyond those granted by statute.State v. Calhoun (1999), 86 Ohio St.3d 279, 281. A post-conviction petition does not provide appellant a second opportunity to litigate his conviction. State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321.
 {¶ 8} R.C. 2953.21(A)(2) provides that petitions for post-conviction relief must be filed within 180 days after the trial transcript has been filed with the appellate court in *Page 4 
the direct appeal. A trial court may not entertain an untimely petition unless it meets the requirements of both R.C. 2953.23(A)(1)(a) and (b), which provide in pertinent part:
 (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in [R.C. 2953.21(A)(2)] or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
 (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.
 {¶ 9} We apply an abuse of discretion standard when reviewing a trial court's decision to deny a post-conviction petition without a hearing.State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, citingCalhoun at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 10} Here, appellant's petition was clearly untimely, as he filed it more than three years after the record was transmitted to this court in his initial appeal. Nevertheless, appellant argues that the trial court abused its discretion by not finding that he was "unavoidably prevented" from discovering the evidence he presented, i.e., his mother's affidavit. To decide this issue, we turn to the events leading up to appellant's conviction, as detailed in this court's decision in Brandy. *Page 5 
 {¶ 11} In brief, Reginald and Nicole Gordon went to Ann Benson's home to purchase marijuana from appellant. Ann is appellant's mother. An argument ensued when appellant accused Reginald of stealing drugs and money from him. The court described the following:
 Reginald exited the car and appellant followed. At this point, Ann came out of the house to see what was going on. Appellant told Ann that Reginald stole his money and his drugs. According to Nicole, Ann got into the Gordons' car, pulled out a gun, and began to search the interior of the car and the trunk. Ann then searched Nicole between her legs and inside her shirt. Nicole testified that Ann said:
 "Nicole, I swear to God in the name of Jesus, I am going to shoot your husband." (Tr. 89.)
 Outside of the car, appellant continued to demand that Reginald give him back his money and drugs. To prove that he had no drugs, Reginald dropped his pants down to his ankles, and according to appellant, Reginald said, "I told you I ain't got your shit." (Tr. 607.) Appellant continued to insist that Nicole and Reginald enter the house for a further search. Nicole and Reginald refused to comply. Nicole testified that appellant:
 "* * * walked over to his mom, and that is when he began to snatch the gun from her.
 "And she said, no, [appellant], she said, I am old; you are young. I will do it. He said, no, I am going to do it. And she said, no, I am going to do it. And that is when he just snatched it out of her hand, and * * * pointed it towards us. [Reginald] was standing right beside me, and we were both standing there, and that is when [Reginald] walked away from me, and that is when he said, [appellant], I told you I don't have anything. I told you I don't have anything. And he pulled his shirt up and held his arms up and just told him, I told you I don't have anything, and pulled his pockets out one more time and said, you searched me, I don't have anything.
 "And he said, if you think I stole something from you, shoot me. And that is when [appellant] said, do you think I'm *Page 6 
playing? I said, no, [appellant], we don't think you are playing. No, [appellant], we don't think you are playing. That is when he said, do you think I am playing? And that is when he shot him. He shot him once.
 "Reginald grabbed his stomach and said, I can't believe this. He said, I can't believe this M.F. shot me. And that's when he leaned back on the car and he got up and he went to turn and got ready to run, and that is when [appellant] shot him again. [Reginald] continued to try to run, and at that time he is dragging his foot, and [appellant] shot him again until he fell on the ground.["] (Tr. 980-99.)
 Appellant gave a different version of events. Appellant testified that Reginald told him, "I am about to fuck you up. And that is when he came at me with his fist balled. And at that time I grabbed the gun from my mom * * * and I just shot. He was coming towards me." (Tr. 610.) Appellant said after he shot Reginald two more times, he dropped the gun and was in a state of shock. (Tr. 614.) Appellant testified that there was no conversation between him and his mother prior to him grabbing the gun and shooting Reginald (Tr. 611.) After the shooting, appellant went inside the house and exited out the side door to the alley.
Brandy, at ¶ 5-12.
 {¶ 12} As noted, the jury returned a verdict finding appellant guilty of aggravated murder with specification and possession of cocaine; the trial court found appellant guilty of having a weapon while under disability. The court sentenced appellant to an aggregate term of 24 years to life.
 {¶ 13} For her role in the shooting, appellant's mother, Ann Benson, was convicted of voluntary manslaughter. She was released from prison in 2005.
 {¶ 14} With his petition for post-conviction relief, appellant presented an affidavit from his mother. In it, she states that she spoke with appellant's trial counsel and told him she was willing to testify on her son's behalf. She also states that: appellant and the victim were in a heated argument; during the argument, the victim walked toward *Page 7 
appellant and that is when appellant "took the gun from [her] and shot" the victim; no conversation took place between her and appellant immediately before or after the shooting; and she lost contact with appellant when she went to prison in 2002. Appellant also presented his own affidavit, which states that his lawyer did not inform him of his mother's willingness to testify on his behalf and that he first learned of this in May 2006.
 {¶ 15} The trial court found that appellant had not met his burden to show that he was unavoidably prevented from discovering his mother's willingness to testify at his trial, and we agree. While appellant states that he lost contact with his mother when she went to prison, appellant does not state that such contact would have been impossible or that he was in some way prevented from making the contact. The fact that his mother was an "eyewitness" to the shooting is not new evidence; her involvement was clear and well-established. And, the fact that she may have spoken to his attorney about testifying does not support post-conviction review. Again, appellant presented no evidence suggesting that he was prevented from discussing this issue with his attorney at the time of trial.
 {¶ 16} We also agree with the trial court's conclusion that evidence suggesting that appellant's counsel could have called, but did not call, appellant's mother as a witness did not necessarily support appellant's claim of ineffective assistance of counsel. The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the *Page 8 
defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. In making these showings, a defendant must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558.
 {¶ 17} Here, a defense attorney's decision not to call appellant's mother as a witness might have involved questions concerning her availability, credibility, and willingness to waive her right against self-incrimination. Appellant has presented no evidence that his counsel's performance fell below the range of competent assistance.
 {¶ 18} In the end, the discretion to determine the credibility of the witnesses and evidence before it lies with the trial court. State v.Lee, Franklin App. No. 05AP-229, 2005-Ohio-6374 (affirming trial court's finding that affidavit in support of post-conviction petition lacked credibility). Here, the trial court rejected appellant's arguments. The court did not abuse its discretion by doing so.
 {¶ 19} In conclusion, we find that appellant failed to meet his burden of establishing that he was unavoidably prevented from discovering the evidence he presented in support of his post-conviction petition. Because his petition was untimely, the trial court lacked jurisdiction to consider it. Therefore, we overrule appellant's assignments of error.
 {¶ 20} Having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed. KLATT and McGRATH, JJ., concur. *Page 1