[Cite as *State v. Ward*, 2023-Ohio-1605.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

STATE OF OHIO,                  :

      Appellee,              :            CASE NO. CA2022-11-020

                               :            O P I N I O N
   - vs -                                        5/15/2023

                               :

CHRISTOPHER WARD,          :

      Appellant.            :

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 19 CR 12910

Martin P. Votel, Preble County Prosecuting Attorney, and Andrea K. Boyd, Assistant Prosecuting Attorney, for appellee.

Christopher Ward, pro se.

**M. POWELL, J.**

{¶ 1} Appellant, Christopher Ward, appeals a decision of the Preble County Court of Common Pleas denying his motion for a new trial based on newly discovered evidence. Finding no error, we affirm.

**Facts and Procedural History**

{¶ 2}　In 2019, Ward, an Ohio State Highway Patrol trooper, was indicted on multiple counts of sexual battery and gross sexual imposition that were alleged to have occurred between 2011 and 2018 and involve multiple victims.　A bench trial was held in December 2019 at which several of the victims testified.　A sexual-battery victim, R.F., testified that Ward had stopped her for a traffic violation and then forced her to fellate him in her vehicle. One of the gross-sexual-imposition victims was a 15-year-old female friend of Ward's daughter.　She testified that, while spending the night with Ward's daughter at his house, Ward had touched her pubic area beneath her clothing when he thought she was asleep. Another of the gross-sexual-imposition victims testified that Ward had stopped the car in which she was a passenger for speeding and that, after ordering her out of the car, he had fondled her breasts and cupped the area between her legs during an ostensible pat-down search.　A third gross-sexual-imposition victim, C.W., testified that Ward had repeatedly stopped her for various traffic offenses.　On a written warning he had written his telephone number, and she had agreed to call him in the hope that he would quit pulling her over.　The two went to dinner and then went back to Ward's home.　There, Ward donned his trooper's uniform, pinned her arms down, put his hands down her pants, and rubbed her vaginal area beneath her clothes.

{¶ 3}　The trial court found Ward guilty on the count of sexual battery and the three counts of gross sexual imposition involving these four victims.　A couple weeks later, before he was sentenced, Ward filed a motion for a new trial.　On May 11, 2020, the court denied the motion and sentenced Ward to a total of three years in prison.

{¶ 4}　Ward appealed his convictions to this court.　He argued that the state had unlawfully withheld favorable evidence from the defense by not producing GPS tracking records that showed the location of his patrol cruiser at the time the offenses occurred.

Ward also argued that his convictions were against the manifest weight of the evidence. We rejected both arguments affirmed his convictions. *State v. Ward*, 12th Dist. Preble No. CA2020-06-009, 2021-Ohio-4116.

{¶ 5} Shortly after our decision, Ward filed a second motion for a new trial based on newly discovered evidence. On November 3, 2022, the trial court denied the motion, concluding that none of the "new" evidence would have changed the outcome of the trial.

{¶ 6} Ward appealed.

## II. Analysis

{¶ 7} Ward presents three assignments of error challenging the trial court's denial of his second new-trial motion. Crim.R. 33(A) pertinently states that "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights: * * * (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(B) also states that a motion for a new trial based on newly discovered evidence must be filed within 120 days after the trial court's decision finding the defendant guilty. An untimely new-trial motion based on newly discovered evidence may be filed only if the defendant first establishes by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the 120-day period. Crim.R. 33(B).

{¶ 8} As an initial matter, Ward filed the new-trial motion at issue in this appeal untimely. He had until mid-April 2020 to ask for a new trial. But he did not file the present motion until November 2021, over a year and a half after the deadline. Although Ward alleged in the motion that he was unavoidably prevented from discovering the evidence, he did not first seek leave to file the motion under Crim.R. 33(B). Nor did the trial court enter an order finding that he was unavoidably prevented from discovering the evidence within

- 3 -

the 120-day period. The state opposed the motion on timeliness grounds, but the trial court ignored the issue and ruled on the motion's merits.

{¶ 9} The Ohio Supreme Court has said that a trial court should not consider the merits of an untimely new-trial motion until it has permitted the defendant to file the motion. *See State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 30, citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, ¶ 41 (stating that "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court"). But the court has not indicated that the two-step process in Crim.R. 33(B) for filing an untimely motion is jurisdictional. Because the trial court elected to rule on the merits of Ward's untimely motion, we will review the court's decision. *See State v. Antony*, 3d Dist. Hardin No. 6-07-23, 2008-Ohio-1998, ¶ 11 (electing to address merits of untimely motion for new trial in the interest of justice).

{¶ 10} In order to warrant a new trial in a criminal case based on the ground of newly discovered evidence, a defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), at the syllabus. "'The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result.'" (Citations omitted.) *State v. Beavers*, 2d Dist. Montgomery No. 22588, 2009-Ohio-5604, ¶ 19, quoting *Dayton v. Martin*, 43 Ohio App.3d 87 (2d Dist.1987), syllabus; *State v. Tebelman*, 3d Dist. Putnam No. 12-22-04, 2023-Ohio-882, ¶ 16 (quoting *Dayton* at syllabus). "Appellate review of a trial court's ruling on a motion for leave to file a

motion for a new trial is conducted under an abuse-of-discretion standard." (Citation omitted.) *Hatton* at ¶ 29.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR NEW TRIAL AS THE NEW EVIDENCE SHOWED ANOTHER STATE TROOPER COMMITTING SEXUAL ACTS IN THE SAME TIME FRAME AS APPELLANT. JUST BECAUSE THE VICTIM IN THAT CASE WAS 17 YEARS OF AGE, WAS NOT A REASON TO DENY THE MOTION FOR NEW TRIAL.

{¶ 13} Ward argues in the first assignment of error that he was entitled to new trial on the sexual-battery charge based on evidence that another state trooper, John McLeod, was charged with sexual battery and rape of a 17-year-old girl around the same time. Ward argues that McLeod resembles him and was stationed in Springfield, Ohio, making it more likely that he was the one who assaulted the victim near Columbus, Ohio.

{¶ 14} The trial court determined that this evidence was not material to Ward's case. The court found that McLeod was arrested in 2020 and charged with two counts of rape, two counts of sexual battery, and one count of aggravated trafficking in drugs. He pleaded no contest to one count of sexual battery. The court confirmed that McLeod was assigned to the Springfield Post of the Ohio State Highway Patrol at the time. The court further found that Ward was 45 years old at the time of his conviction and that McLeod was 40 years old and that photographs of both men show that they "strongly resemble each other." But the court found that there were material differences between the two cases. Among them, Ward was alleged to have been in uniform; McLeod was not. And McLeod's victim was a 17-year-old girl who allegedly had sex with him in exchange for drugs, which is entirely unlike the allegations against Ward.

{¶ 15} While the state disagrees with the trial court's finding of a strong resemblance

between the two men, that is a minor point. Ward contends that this evidence could have been used to impeach the victim's credibility regarding her identification of Ward as her assailant. But the evidence shows that it was highly unlikely that she mistook Ward for the other trooper. The victim claimed that Ward pulled her over for having a broken taillight on her trailer and then physically assaulted and threatened her and forced her to perform oral sex on him. Ward fails to convince us that, even if the victim had been shown a photograph of McLeod, it would not have changed the outcome of the trial.

{¶ 16} The evidence that McLeod was also charged with sexual battery did not warrant a new trial on that charge. This evidence did not disclose a strong probability that it would change the result if a new trial were granted. The trial court properly denied Ward's motion for a new trial based on that evidence.

{¶ 17} The first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION WHEN NOT TAKING INTO CONSIDERATION NEWLY DISCOVERED EVIDENCE THAT WOULD HAVE CHANGED THE TRUTHFULNESS OF [C.W.'S] TESTIMONY, AS WELL AS THE TESTIMONY OF [R.F.]'S, FALSELY ACCUSING OTHER INDIVIDUALS OF RAPING HER AND MAKING A FALSE IDENTIFICATION OF INNOCENT PEOPLE. THE TRIAL COURT HAD THE DATES IN THE CHARGES CONFUSED WITH ONE ANOTHER, WHEREBY PREJUDICING THE DEFENSE AND DENYING THE APPELLANT ADEQUATE PROCEDURAL DUE PROCESS.

{¶ 20} In the second assignment of error, Ward argues that he was entitled to a new trial on one of his convictions for gross sexual imposition based on evidence that the victim, C.W., was adjudged mentally incompetent six months after she testified at his trial.

{¶ 21} The trial court here found that C.W. had been found mentally ill by a probate

court. According to the trial court, the psychiatrist who examined her filed a written report in April 2020 stating that she had been contacting law enforcement and other state agencies alleging that she had been raped a few years ago and that her babies had been stolen. The psychiatrist noted that she had reportedly taken pictures of other people's children on Facebook and claimed that they were hers. Further, the physician noted that C.W. had contacted the Ohio State Medical Board and the Ohio State Attorney General telling them that her 12-year-old daughter had been raped and could be pregnant. The psychiatrist concluded that C.W. was mentally ill and should be hospitalized. The probate court agreed and ordered her committed to a mental ward for ninety days. That order expired in July 2020 and was not renewed. In addition, the trial here court found that C.W. was later charged with having a weapon under disability (mental illness) and initially found incompetent to stand trial. She was later determined to be competent and pleaded guilty to the charge. The trial court concluded that the evidence of C.W.'s mental health in 2020 said nothing about her mental health when she testified at Ward's trial in 2019. We agree.

{¶ 22} There is nothing linking C.W.'s mental health in 2020 with the credibility of her testimony in 2019 at Ward's trial. The evidence does not relate her subsequent mental illness and incompetence to stand trial with an inability to testify truthfully at Ward's trial. There is no evidence that at the time C.W. testified at Ward's trial her mental state was such that she lacked the capacity to "observe, remember, or relate" the facts to which she testified. Evid.R. 616(B) (stating grounds for impeaching a witness). There is no evidence that C.W. had symptoms of mental illness at the time she testified against Ward. Furthermore, most of C.W.'s testimony against Ward, except that relating to the sexual assault itself, was corroborated by Ward himself. We note too that the rape that C.W. referred to in her mental examination allegedly occurred in 2018, which was well after her encounter with Ward. The evidence does not disclose a strong probability that it would

change the result if a new trial were granted.

{¶ 23} Ward also argues that there was evidence that the victim of the sexual-battery offense, R.F., had made false claims of sexual assaults against others. But Ward did not assert this as a basis for a new trial in his second new-trial motion. Thus, he has forfeited the issue on appeal. *See State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 24 (stating that it is "well-settled that issues not raised in the trial court may not be raised for the first time on appeal").

{¶ 24} The trial court properly denied Ward's motion for a new trial based on the evidence of C.W.'s later mental illness.

{¶ 25} The second assignment of error is overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR NEW TRIAL WITHOUT EVEN HAVING THE GPS TRACKING FOR ANOTHER OHIO STATE TROOPER, MR. MCLEOD, AND THEN AFTER DENYING THE MOTION, ORDERED THE STATE TO PRODUCE ANY EVIDENCE THAT OFFICER MCLEOD OR APPELLANT TOOK THEIR CRUISER TO FRANKLIN COUNTY AT ANY TIME FROM APRIL TO JULY, 2017.

{¶ 28} Lastly, in his third assignment of error, Ward argues that newly discovered evidence shows that he made only one transport to Franklin County in 2017. He says that he has made a public records request to the Ohio State Highway Patrol to confirm this. Ward seems to be arguing that this evidence would show that it was not he who committed the sexual battery near Columbus, Ohio.

{¶ 29} As an initial matter, we note that the trial court's judgment entry denying Ward's second motion for a new trial is unclear as to whether the court denied the motion for new trial regarding the GPS tracking records. The court stated that "[i]n all respects,

Ward's motion for a new trial is Overruled," but it also ordered that the state provide Ward with "any evidence that Officer McLeod or Officer Ward took their cruiser to Franklin County at anytime from April to July 2017." In any event, the state responded to the order by telling the court that the 2017 GPS tracking records no longer exist as records were retained for only three years. Ward did not pursue the matter further but filed the present appeal.

{¶ 30} Ward's argument and claim here are barred by res judicata. He argued in his first motion for a new trial that the GPS tracking records would prove his innocence, and res judicata bars the use of successive new trial motions to raise issues that could have been asserted in a prior motion. *State v. Reed*, 2d Dist. Montgomery No. 26526, 2015-Ohio-3051, ¶ 28. Res judicata also bars "any claim that was or could have been raised at trial or on direct appeal." *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). Ward argued in his direct appeal that he needed additional GPS records, and he could have argued that he needed the additional records he seeks here.

{¶ 31} The trial court denied Ward's first motion for a new trial, and in our review, we found both that the GPS tracking records were available to him and that they were of limited value. We noted that the state had produced hundreds of pages of GPS tracking records in discovery, so Ward was aware that the state had records for other timeframes and could have requested them. Additional records would be immaterial anyway, we said, because his location was recorded only when he reported an incident. In other words, "if Ward did not report an incident during the times the women were assaulted, his cruiser's location would not have been recorded and he would not have been able to prove his physical location in a different area." *Ward*, 2021-Ohio-4116, at ¶ 14. Thus, we concluded that "[h]ad Ward believed that his cruiser's location could have proven he was somewhere else during a time he was accused of committing the sexual misconduct, he could have requested a copy of the record via a public records request. However, he did not do so * *

*." *Id.* at ¶ 15.

{¶ 32} Although Ward would not have known to request GPS tracking records for McLeod's cruiser location, we are not convinced that this evidence would have changed the outcome of the trial. In any event, based on the state's three-year retention policy, those records likely no longer exist.

{¶ 33} The third assignment of error is overruled.

### III. Conclusion

{¶ 34} We have overruled the three assignments of error presented. The trial court's judgment is affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.